[Doc. Nos. 36, 40, 45]

## THE UNITED STATES DISTRICT COURT
### FOR THE DISTRICT OF NEW JERSEY
### CAMDEN VICINAGE

JAMIE DEE WORSTER-SIMS              :
AND ASHLEY SIMS, H/W                :
                                    :
          Plaintiffs,               :
                                    :
     v.                             :    Civil No. 13-1981 (RBK/JS)
                                    :
TROPICANA ENTERTAINMENT,            :
INC., et al                         :
                                    :
          Defendants.               :
_____     :

### <u>MEMORANDUM OPINION AND ORDER</u>

This matter is before the Court on the Motions for Leave to Amend Answers to Include a Third-Party Complaint Against Beau Cantera filed by defendants City of Atlantic City [Doc. No. 36], Tropicana Atlantic City Corp. ("Tropicana") [Doc. No. 40], and Officer Michael Jones [Doc. No. 45].[1] The Court received plaintiffs' opposition [Doc. Nos. 42, 50, 51] and defendants' replies [Doc. Nos. 48, 53, 54]. The Court recently heard oral argument. The subject three motions involve the same issue. Namely, whether the defendants in a police excessive force case

_____

[1] For the purpose of the present motions, the following defendants are hereinafter collectively referred to as "Tropicana": (1) Tropicana Entertainment, Inc.; (2) Tropicana Entertainment Holdings, LLC; (3) Tropicana Entertainment Intermediate Holdings, LLC; (4) Tropicana Entertainment, LLC; (5) Tropicana Atlantic City Corp.; and (6) Tropicana AC Sub Corp.

may join a non-party who allegedly set into motion a "chain of events" that led the officer to strike the plaintiff. More specifically, whether defendants can join Beau Cantera who "poked" Officer Jones right before the Officer punched plaintiff in the face. The answer to these questions is no. Accordingly, for the reasons to be discussed, defendants' motions are DENIED.

Background

Plaintiffs filed the instant action on March 28, 2013, naming the following defendants: (1) Tropicana; (2) Providence AC, Inc. ("Providence"); (3) Metronome Hospitality Group ("Metronome"); (4) ABC Corporation(s) 1-10; (5) Atlantic City Police Officer Michael Jones; (6) City of Atlantic City; (7) Atlantic City Police Department; and (8) John Doe(s) 1-10. See generally Complaint [Doc. No. 1]. Plaintiff Jamie Worster-Sims asserts claims for assault, battery, negligence, negligent infliction of emotional distress, and intentional infliction of emotional distress against all defendants. Id. at ¶¶ 46-64. Worster-Sims also asserts claims for deliberate indifference to his medical needs and civil rights violations pursuant to 42 U.S.C. § 1983 against defendants Jones, the City of Atlantic City, the Atlantic City Police Department, and John Does 1-10. Id. at ¶¶ 65-86. Plaintiff Ashley Sims, Worster-Sims's wife, asserts a per quod claim against all defendants. Id. at ¶¶ 87-88.

2

Plaintiffs allege that in May of 2011, Worster-Sims and his cousin, Beau Cantera ("Cantera"), were forcibly removed from the Providence Atlantic City nightclub by Officer Jones and security personnel and/or employees of Tropicana. Id. at ¶¶ 29-31. Plaintiffs allege that while Worster-Sims was being pushed out of the nightclub, his shoe fell off. Id. at ¶ 33. Plaintiffs allege that while Worster-Sims "attempted to return to the interior of the nightclub . . . to retrieve his missing shoe . . . he was struck in the head with a closed fist by [d]efendant, [Officer] Michael Jones." Id. at ¶¶ 34-35. Plaintiffs claim that Officer Jones acted without justification and was not provoked by Worster-Sims. Id. at ¶ 38. Plaintiffs also allege that defendants acted with deliberate indifference to Worster-Sims's "obvious need for medical assistance" and that as a result of the attack he suffered serious and permanent injuries, including traumatic brain injuries. Id. at ¶¶ 41, 45.

On May 9, 2013, Officer Jones and the City of Atlantic City filed an answer asserting a counterclaim for attorney's fees pursuant to 42 U.S.C. § 1988 and a cross-claim for contribution against Providence, Metronome, and Tropicana under New Jersey's Joint Tortfeasors Contribution Law ("JTCL") (N.J. Stat. Ann. §§ 2A:53A-1 to -5) and/or the Comparative Negligence Act of New Jersey (N.J. Stat. Ann. §§ 2A:15-5.1 to -5.3). [Doc. No. 7]. Tropicana subsequently filed its answer asserting a cross-claim

for contribution and/or indemnification against Providence, Metronome, Officer Jones, the City of Atlantic City, and the Atlantic City Police Department. [Doc. No. 10]. Tropicana also asserted a cross-claim for contractual indemnification against Providence and Metronome. Id. Providence and Metronome filed an answer asserting cross-claims for contribution and indemnification against Officer Jones, the City of Atlantic City, and the Atlantic City Police Department. [Doc. No. 15].

In the motions presently before the Court, defendants seek leave to amend their answers to include a third-party complaint against Cantera for contribution and/or indemnification under the JTCL and the Comparative Negligence Act of New Jersey. In sum and substance, defendants argue that Cantera "initiated the alleged incident when he approached Officer Jones . . . and proceeded to push his finger into Officer Jones's chest." Atlantic City Brief at 2 [Doc. No. 36]. Defendants claim they are entitled to contribution and/or indemnification from Cantera alleging that "[b]ut for the actions/conduct of . . . Cantera, the physical altercation would not have taken place, and [Worster-Sims] would not have brought claims against" defendants. Atlantic City Proposed Third-Party Compl. at ¶ 14 [Doc. No. 36]; Officer Jones Proposed Third-Party Compl. at ¶ 14 [Doc. No. 45]; Tropicana Proposed Third-Party Compl. at ¶ 14 [Doc. No. 40].

4

In opposition, plaintiffs argue that defendants' proposed amendments are futile. Plaintiffs argue, <u>inter alia</u>, that defendants fail to show "any nexus between Cantera's alleged breach of duty owed to" defendants and the injuries caused to Worster-Sims. Opp'n Br. at 4 [Doc. No. 50]. Plaintiffs also argue that the alleged breach of duty committed by Cantera in "making unwanted contact with a police officer . . . is completely independent of the claim that Officer Jones'[s] assault" violated Worster-Sims's civil rights. <u>Id.</u> at 5.

<u>Discussion</u>

Defendants' motions involve an intersection of Fed. R. Civ. P. 15(a), which governs motions to amend the pleadings, and Fed. R. Civ. P. 14(a), which governs third-party practice. <u>See</u> <u>Cnty. of Hudson v. Janiszewski</u>, C.A. No. 06-319 (JAP), 2007 WL 2688882, at *3 (D.N.J. Sept. 13, 2007). Pursuant to Fed. R. Civ. P. 15(a), leave to amend the pleadings "shall be freely given when justice so requires." <u>Foman v. Davis</u>, 371 U.S. 178, 182 (1962). A court will exercise its discretion to deny a motion to amend only where it "'is apparent from the record that (1) the moving party has demonstrated undue delay, bad faith or dilatory motives, (2) the amendment would be futile, or (3) the amendment would prejudice the other party.'" <u>Janiszewski</u>, 2007 WL 2688882, at *3 (quoting <u>Hill v. City of Scranton</u>, 411 F.3d 118, 134 (3d Cir. 2005)). Here, the Court finds there was no undue delay, bad

faith or dilatory motives on the part of the defendants, and plaintiff will not be substantially prejudiced if defendants' motions are granted. Thus, the Court need only consider the futility of the proposed amendments.[2] An amended complaint is futile if it fails to state a claim upon which relief could be granted. Burtch v. Milberg Factors, Inc., 662 F.3d 212, 231 (3d Cir. 2011) (citation omitted). To determine if an amendment is futile a court should use "the same standard of legal sufficiency as applies under Rule 12(b)(6)." Id. (citation omitted).

A motion for leave to file a third-party complaint impleading new parties is governed by Fed. R. Civ. P. 14(a)

---

[2]   Since defendants have not objected to plaintiffs' standing to oppose their motions, the Court will not address the issue in detail. Nevertheless, even in the face of a recent opinion by the Court's colleague (Custom Pak Brokerage, LLC v. Dandrea Produce, Inc., C.A. No. 13-5592 (NLH/AMD), 2014 WL 988829, at *2 (D.N.J. Feb. 27, 2014)), the Court finds it has the authority to address the futility of defendants' proposed amendments at this time. If the amendments are granted it will delay the final resolution of the case and expand the discovery process. Thus, it cannot be said that plaintiffs are wholly unaffected by defendants' amendments. Id. In addition, the Court has a duty to construe the Rules of Procedure in a manner to "secure the just, speedy, and inexpensive determination of every action and proceeding." Fed. R. Civ. P. 1. It is much more efficient to address the futility of defendants' amendments now rather than waiting for the issue to be raised months from now after defendants' amendments are filed, Cantera is served, Cantera retains an attorney, and then Cantera's inevitable Rule 12(b)(6) motion to dismiss is filed. At bottom, if an amendment fails as a matter of law to warrant any relief, leave to amend should be denied as futile. See In re Burlington Coat Factory Secs. Litig., 114 F.3d 1410, 1434 (3d Cir. 1997). This is precisely what the Court is doing.

which provides that "[a] defending party may, as third-party
plaintiff, serve a summons and complaint on a nonparty who is or
may be liable to it for all or part of the claim against it."
Rule 14(a)(1); see Spencer v. Cannon Equip. Co., C.A. 07-2437
(JBS), 2009 WL 1883929, at *2 (D.N.J. June 29, 2009) ("The
purpose of Rule 14(a) is to avoid circuitry of action and
multiplicity of litigation.") (citation omitted). Importantly, a
third-party claim may only be asserted under Rule 14(a) "when
the third party's liability is in some way dependent on the
outcome of the main claim or when the third party is secondarily
liable to [the] defendant." Janiszewski, 2007 WL 2688882, at *4
(citation omitted).

        In the present motions, defendants seek to amend their
answers to assert a third-party complaint against Cantera for
contribution/indemnification pursuant to the JTCL and the
Comparative Negligence Act. Pursuant to the JTCL:

>       Where injury or damage is suffered by any person as a
>       result of the wrongful act, neglect or default of
>       joint tortfeasors, and the person so suffering injury
>       or damage recovers a money judgment or judgments for
>       such injury or damage against one or more of the joint
>       tortfeasors, either in one action or in separate
>       actions, and any one of the joint tortfeasors pays
>       such judgment in whole or in part, he shall be
>       entitled to recover contribution from the other joint
>       tortfeasor or joint tortfeasors for the excess so paid
>       over his pro rata share . . . .

N.J. Stat. Ann. § 2A:53A-3. The Comparative Negligence Act modified the JTCL's pro-rata apportionment of liability among joint tortfeasors so that "[j]oint tortfeasors no longer share liability on a pro-rata basis but instead on the basis of proportion of fault as determined by the trier of fact." Dunn v. Praiss, 656 A.2d 413, 419 (N.J. 1995) ("The effect of the Comparative Negligence Act on contribution is to measure the remedy by percentage of responsibility rather than by number of culpable parties."). Under the JTCL, "joint tortfeasors" are defined as "two or more persons jointly or severally liable in tort for the same injury to person or property, whether or not judgment has been recovered against all or some of them." N.J. Stat. Ann. § 2A:53A-1. "[W]hile there may be contribution for joint liability even though the wrongs may not be common or concurrent . . . the statute makes clear that liability must be made for the same injury." Finderne Mgmt. Co. v. Barrett, 809 A.2d 857, 864 (N.J. Super. Ct. App. Div. 2002) (internal quotation marks and citation omitted). "Where the pleadings show separate torts, severable as to time and breaching different duties, rather than a joint tort, dismissal of the third-party action is appropriate." Id. (citation omitted).

It is well-settled in New Jersey that "'the true test [for joint tortfeasor contribution] is joint liability and *not* joint, common or concurrent negligence.'" Cherry Hill Manor Assocs. v.

8

Faugno, 861 A.2d 123, 127-28 (N.J. 2004) (emphasis in original)

(quoting Farren v. N.J. Tpk. Auth., 106 A.2d 752, 755 (N.J.

Super. Ct. App. Div. 1954)). A party seeking contribution from

another under the JTCL must satisfy the following standard set

forth by the New Jersey Supreme Court:

> "[B]y the very nature of the right and the correlative
> obligation, it is incumbent on the contribution
> claimant in a case . . . to establish a common
> liability for the wrongful act, neglect or default
> made [on] the basis of the judgment and the quantum of
> the damages ensuing from the joint offense. The
> plaintiff must prove that he and the defendant in
> contribution are In aequali jure; he cannot prevail
> unless the injured person also had a cause of action
> for tortious injury against the defendant called on
> for contribution."

Sattelberger v. Telep, 102 A.2d 577, 584 (N.J. 1954) (emphasis

added); Adler's Quality Bakery, Inc. v. Gaseteria, Inc., 159

A.2d 97, 108 (N.J. 1960) (reiterating that the standard for

contribution requires "that the injured person have a cause of

action against both plaintiff and defendant in contribution").

Thus, in order to determine whether defendants and Cantera

are "joint" tortfeasors as defined by the JTCL, the Court must

determine whether they are subject to common liability to

plaintiff at the time plaintiff's cause of action accrued. See

Cherry Hill, 861 A.2d at 128. Stated differently, the Court must

determine whether Worster-Sims has an actionable claim against

Cantera under the theory that Cantera's alleged negligent and

unlawful actions towards Officer Jones were the proximate cause

of Worster-Sims's injuries. Stated even more succinctly, Cantera cannot be liable to Worster-Sims unless he owed Worster-Sims a duty of care.[3]

"[T]he issue whether a defendant owes a legal duty is generally a question of law for the court to decide." <u>Clohesy v. Food Circus Supermarkets, Inc.</u>, 694 A.2d 1017, 1020 (N.J. 1997) (citing <u>Carvalho v. Toll Bros. & Developers</u>, 675 A.2d 209, 212 (N.J. 1996)). Courts determine the existence and scope of a duty under "'the totality of the circumstances'" which must be "'reasonable'" under those circumstances. <u>J.S. v. R.T.H.</u>, 714 A.2d 924, 929 (N.J. 1998) (citation omitted). In assessing the circumstances, courts look to the following factors: "(1) the relationship of the parties; (2) the nature of the attendant risk; (3) the ability and opportunity to exercise control; (4) the public interest in the proposed solution; (5) the objective foreseeability of harm." <u>Ivins v. Town Tavern</u>, 762 A.2d 232, 235 (N.J. Super. Ct. App. Div. 2000) (citing <u>Alloway v. Bradlees, Inc.</u>, 723 A.2d 960 (N.J. 1999)). The Court should also assess the defendant's "'responsibility for conditions creating the risk of harm' and an analysis of whether defendant had

---

[3] Under New Jersey law, the requisite elements of
a negligence cause of action are: "(1) the existence of a duty;
(2) the breach of that duty; and (3) proximate causation of
damages." <u>LaBracio Family P'ship v. 1239 Roosevelt Ave., Inc.</u>,
773 A.2d 1209, 1212 (N.J. Super. Ct. App. Div. 2001) (citation
omitted).

sufficient control, opportunity, and ability to have avoided the risk of harm." J.S., 714 A.2d at 928-29 (noting that duty is a "malleable concept" that must be adjusted to the "'changing social relations and exigencies and man's relation to his fellows.'") (citation omitted). "Reasonableness, public policy, fairness and common sense also must be taken into account when imposing new legal duties." Sanchez v. Independent Bus Co., 817 A.2d 318, 322 (N.J. Super. Ct. App. Div. 2003); J.S., 714 A.2d at 928 ("Ultimately, the determination of the existence of a duty is a question of fairness and public policy.") (citation omitted).

The key consideration for the Court in determining whether a duty exists is the "foreseeability of the risk, the seriousness of the risk, and the practicality of preventing it." Sanchez, 817 A.2d at 321 (citations omitted). Thus, "'the crucial element in determining whether or not to impose a duty rests on whether the defendant was reasonably able to comprehend that his [alleged negligent] conduct could injure as it did.'" Ivins, 762 A.2d at 236 (quoting Taylor by Taylor v. Cutler, 703 A.2d 294, 298 (N.J. Super. Ct. App. Div. 1997)). "[W]hen the risk of harm is that posed by third persons, a plaintiff may be required to prove that [the] defendant was in a position to 'know or have reason to know, from past experience, that there [was] a likelihood of conduct on the part of [a] third person[]'

11

that was 'likely to endanger the safety' of another." <u>J.S.</u>, 714
A.2d at 928 (quoting <u>Clohesy</u>, 694 A.2d at 1023). However, "even
if the risk is foreseeable, a legal duty does not necessarily
arise." <u>Sanchez</u>, 817 A.2d at 321; <u>Williamson v. Waldman</u>, 696
A.2d 14, 24 (N.J. 1997) (explaining that "'[a]lthough a
foreseeable risk is the indispensable cornerstone of any
formulation of a duty of care, not all foreseeable risks give
rise to duties.'") (citation omitted).

The Court finds that under the "totality of the
circumstances," Cantera did not owe plaintiff a duty. The Court
finds that it is not reasonable for Cantera to foresee that if
he poked Officer Jones, the Officer would react by punching
plaintiff in the face. <u>See</u> <u>Sanchez</u>, 817 A.2d at 322.[4] In the
absence of a duty of care owed to Worster-Sims, Cantera cannot
be held liable for injuries Worster-Sims sustained as a result
of Officer Jones's actions. As noted, in determining whether a
duty exists the Court must examine fairness and public policy.
<u>J.S.</u>, 714 A.2d at 928. The Court is concerned with the
potentially limitless liability that could result if a person
were under a duty to foresee that his or her behavior would

---

[4] The Court notes that defendants have failed to cite a single
case that supports a cause of action for contribution against a
non-party for instigating a physical altercation that allegedly
set in motion a "chain of events" that led a police officer to
strike someone else.

ultimately lead a police officer to punch a third-party. Defendants' "chain of events" theory of liability could ensnare all sorts of people who have no legitimate connection to plaintiff's allegations against Officer Jones, such as the friend who invited Cantera to Atlantic City even though he suspected that Cantera may have been a "hot head," or the colleague who dared Cantera to "poke" the officer.[5] Under defendants' "chain of events" or "but for" theory, these hypothetical individuals could be joined as defendants. The Court does not agree that these individuals are "joint tortfeasors" or that they should be joined.

The Court in Ivins noted that the critical element in deciding whether to impose a duty was whether the defendant could reasonably comprehend that his conduct would injure as it did. 762 A.2d at 236. This did not occur here. The Court finds that it was not objectively foreseeable that Cantera's poking would cause a uniformed police officer to punch Worster-Sims.

Further, the public interest is not advanced by permitting Cantera's joinder. As noted, defendants' "chain of events" theory of liability could ensnare a limitless list of potentially responsible parties. Police officers must be held accountable for their conduct and should not be able to facilely

---

[5]  These examples are made up.

13

shift blame for the consequences of their deliberate actions. To be sure, the Court is not weighing in on Officer Jones's liability to Worster-Sims. A fact-finder may or may not find that Officer Jones is liable. The Court is instead ruling that Cantera did not owe a duty to Worster-Sims and that Cantera is not jointly liable for the fact that Officer Jones punched Worster-Sims and plaintiff's resulting injuries.

Defendants' liability analysis is flawed. For example, they argue that Cantera should be joined because he "instigated the entire chain of events" and "but for" Cantera, they would not be defending this lawsuit. Atlantic City Br. at 2-3. Atlantic City emphatically argues "[b]ut for the actions/conduct of Beau Cantera, [p]laintiff would not have brought suit against the City of Atlantic City." Reply Br. at 5 [Doc. No. 48]. Similarly, at oral argument defendants argued that Cantera should be joined because "he provoked a situation in which the plaintiff was injured." May 5, 2014, Transcript of Oral Argument ("Tr.") at 14:23-25. [Doc. No. 58]. The problem with defendants' analysis is that it ignores the concept of duty. Under the circumstances of this case, Cantera did not owe a duty to plaintiff to refrain from "poking" Officer Jones because it was not foreseeable that

the poking would cause Officer Jones to deliberately punch plaintiff in the face. Thus, Cantera may not be joined.[6]

To be clear, defendants do not allege that Cantera's liability stems from his physical contact with Worster-Sims. Rather, defendants claim that by "poking" Officer Jones, Cantera started a chain of events that caused Worster-Sims to become "involved in the physical altercation." Atlantic City Third-Party Compl. at ¶ 11. If, for example, defendants argued that Cantera hit Worster-Sims or that Cantera pushed or propelled Officer Jones into Worster-Sims, the Court's analysis would not be as straightforward. However, such allegations are not before the Court.

At oral argument, defense counsel asserted that it was Cantera's unreasonable decision to poke Officer Jones that encouraged Worster-Sims to confront Jones as well. Specifically, defense counsel contended that Worster-Sims was "so drunk, that he decided . . . based on what he saw [Cantera] do, it was okay for him to go up to a uniformed police officer, take his hand, mush him in the face and push him backwards. And then [Worster-Sims] was struck." Tr. 21:4-8. Despite defense counsel's assertions, the proposed amended pleadings fail to include any

---

[6] As acknowledged at oral argument, this is not a case where it is alleged that Officer Jones thought plaintiff poked him. Instead, it is alleged that after Cantera poked him Officer Jones intentionally struck plaintiff. Tr. 27:10-16.

allegations that Worster-Sims offensively touched or confronted Officer Jones in response to Cantera's behavior. Even assuming arguendo that defendants had pled that Worster-Sims joined in the alleged assault against Officer Jones, such a claim would weigh in favor of limiting the scope of Cantera's duty of care.[7] The foreseeability and nature of the risk of harm created by "poking" Jones in the chest becomes even more attenuated once the alleged intervening and intentional acts of Worster-Sims are inserted into the analysis. However, the Court need not consider the aforementioned scenario, as the Court's determination on whether to grant leave to amend rests on allegations set forth in the proposed pleadings. See Snyder v. Baxter Healthcare, Inc., 393 F. App'x 905, 907 n.4 (3d Cir. 2010).

The decisions in Sanchez and Ivins are instructive. In Sanchez, the third-party defendant boarded the defendant's bus carrying a "boom box" radio with the volume turned up in violation of the bus's policy. 817 A.2d at 320. When the defendant bus driver asked the third-party defendant to turn the volume down, he initially complied. Id. However, when the third-party defendant turned the radio's volume up a few minutes later, the driver did not voice an objection despite hearing the

---

[7] At oral argument, Atlantic City's counsel stated that "[Worster-Sims] was punched in the face, because he physically assaulted the police officer by taking his hand, grabbing him by the face and pushing him backwards. [Worster-Sims] physically assaulted the police officer." Tr. 23:23 to 24:1.

radio. One of the plaintiffs requested that the third-party defendant turn the volume down, but was ignored. Id. at 321. While the third-party defendant waited for his stop, he stepped on the foot of another passenger, which led to a heated verbal exchange and subsequent physical altercation between the third-party defendant and the passenger. Id. During the fight, the passenger punched the third-party defendant, who responded by firing a previously concealed handgun. One of the plaintiffs, who was merely a bystander, was hit by a bullet and rendered a paraplegic. Id. The other plaintiff was injured as passengers fled the bus. Id.[8] The bystander plaintiffs subsequently brought a negligence action against the defendant bus company and the bus driver. The trial court dismissed the plaintiffs' complaints on the defendants' motion for summary judgment, finding that the defendants owed no duty to protect the plaintiffs against an armed passenger's actions. Id. at 320.

On the plaintiffs' appeal, the court considered the issue of whether the wrongful act of the third-party defendant shooter could have been reasonably anticipated. Id. at 322 (citations omitted). In affirming the dismissal, the appellate court found that in light of the third-party defendant's compliance with the

---

[8] In Sanchez, the passenger who punched the third-party defendant after his foot was stepped on was named as a third-party defendant by the defendant bus company and bus driver. Id. at 318. The plaintiff who had been shot was also named as a third-party defendant by the defendant bus company. Id.

bus driver's request to lower his radio, the absence of
threatening behavior prior to the altercation, and the short
time period in which the events transpired, "there [was] no
basis to conclude that the bus driver should have anticipated
the events that actually occurred." Id. The appellate court
acknowledged that the bus company owed a "high degree of care
for the safety of its passengers so as to avoid dangers that
[were] known or reasonably anticipated." Id. (citation omitted).
However, the court declined to impose upon the bus company the
duty of guaranteeing passenger safety because the defendants:
(1) "had nothing to do with creating the danger which brought
about the injuries to either plaintiff"; and (2) did not have
"any reason to know or foresee that [the third-party defendant]
would harm any of the passengers." Id. at 323-24. The Court
explained that even if there was a duty to protect against a
passenger with a concealed weapon, "it [could not] be reasonably
said that any acts or omissions of the defendants were a
proximate cause of the shooting." Id. at 324.

     In Ivins, the plaintiff was injured in the defendant
tavern's parking lot when he interceded in a fight between his
friend and another patron, the aggressor in the altercation. 762
A.2d at 234. The plaintiff asserted a negligence claim against
the defendant tavern on the basis that its duty of care to its
customers obligated it to provide a security guard or bouncer in

18

the parking lot. Id. The plaintiff contended that the defendant should have reasonably foreseen the eventuality of a fight in its parking lot because the defendant's employees were aware of the aggressor's violent nature, there was a "general knowledge" of the friction between the plaintiff's friend and the aggressor, and there had been prior incidents of fights/assaults in the defendant's lot. Id. at 233-36.

At trial, the court granted the defendant's motion for involuntary dismissal, which the plaintiff subsequently appealed. Id. at 233. The appellate court affirmed, agreeing with the trial judge's conclusion that "the proofs were . . . insufficient to present a jury issue on [the] plaintiff's claim of negligence by the tavern." Id. at 235. After considering the type of evidence needed to impose a duty on the defendant to foresee and prevent a fight, the court found that there was no evidence that the tavern was located in an area "particularly susceptible" to violence. Id. at 237. Furthermore, the court found that:

> "[A]lthough the aggressor was known by the tavern and its employees to have a potentially violent nature and the employees may have been aware of the friction between the aggressor and [the] plaintiff's friend, there was no evidence of any events occurring inside the tavern that night that should have put the tavern employees on notice that a possible fight was in the works, triggering a duty on their part to take preventive measures."

Id.

19

Similar to the plaintiffs in Sanchez and Ivins, defendants in the present action seek to impose a duty on Cantera to foresee unforeseeable consequences. It simply was not foreseeable that if Cantera "poked" a police officer, the officer would then punch plaintiff in the face. Under the circumstances present herein, the Court will not impose such a duty on Cantera. The Court finds that Cantera did not owe a duty to Worster-Sims to reasonably anticipate the actions of Officer Jones.

Based on the Court's finding, defendants are not entitled to contribution under the JTCL because they cannot establish that Cantera and Officer Jones are "joint tortfeasors." See Hut v. Antonio, 229 A.2d 823, 827 (N.J. Super. Ct. Law Div. 1967) (defendant property owner could not obtain contribution from third-party defendant property surveyor who failed to disclose a wall that collapsed on the plaintiff because the surveyor "breached no duty owing to [the] plaintiff and his negligence, if any, did not contribute to the happening of [the] accident."). The Court finds that the alleged wrongful act committed by Cantera against Officer Jones was separate and independent from any alleged wrong Jones committed against Worster-Sims. Given that defendants are not entitled to contribution from Cantera under the JTCL, defendants' contribution claims are denied as futile. See Finderne, 809 A.2d

20

at 864 (defendants accused of misrepresenting tax advantages of welfare benefit plan were not entitled to contribution from the plaintiff's accountant under the JTCL because the accountant did not owe a duty to the defendants and the wrongs alleged against the defendants and the accountant did not relate to the same injury).

In light of the Court's holding that Cantera did not owe a duty to Worster-Sims, the Court finds that defendants' claims for indemnification against Cantera are also futile. Under New Jersey law, "'the right of indemnity is granted only to those whose liability is secondary and not primary, i.e., whose negligence is not morally culpable but is merely constructive, technical, imputed or vicarious.'" Hut, 229 A.2d at 827 (quoting Pub. Serv. Elec. & Gas Co. v. Waldroup, 119 A.2d 172, 179 (N.J. Super. Ct. App. Div. 1955)). "The loss, as a matter of law, should fall on the one whose negligence actually occasioned it." Id.; see Ramos v. Browning Ferris Indus. of S. Jersey, 510 A.2d 1152, 1158-59 (N.J. 1986) (noting the general rule that "a party who is at fault may not obtain indemnification for its own acts.") (citation omitted).[9] The New Jersey Supreme Court

---

[9] The Court acknowledges the exception to this general rule that "one who in good faith and at the direction of another commits a tort is allowed indemnity against the person who caused him to act." Ramos, 510 A.2d at 1159. However, this exception is inapplicable to the present case, as Officer Jones does not allege that he acted under the direction of Cantera.

explained that "[i]t would be inequitable to permit an active wrongdoer in the absence of a contractual understanding between the parties to obtain indemnity from another wrongdoer and thus escape any responsibility." Cartel Capital Corp. v. Fireco of New Jersey, 410 A.2d 674, 683 (N.J. 1980).[10]

As already noted, Cantera is not a joint tortfeasor. In addition, no contractual relationship exists between defendants and Cantera. As a result, since Cantera cannot be held liable to plaintiff, defendants' alleged liability is primary, rather than secondary. See Hut, 229 A.2d at 827 ("[A] person who is, or may be, [p]rimarily liable to the injured party cannot seek indemnification under the theory of implied indemnity."). Therefore, defendants are not entitled to indemnification from Cantera.

Conclusion

Accordingly, for all of the foregoing reasons,

IT IS HEREBY ORDERED this 2nd day of June, 2014, that

---

[10] In light of the Court's holding that defendants have no actionable claim against Cantera, fault cannot be apportioned to Cantera under the Comparative Negligence Act. See LaBracio, 773 A.2d at 1214 ("To apportion liability under the Act, the fact-finder should compare the fault of all parties whose negligence was a proximate cause of the plaintiff's injuries.") (citation omitted).

defendants' motions for leave to amend their answers to include

a third-party complaint naming Beau Cantera are DENIED.


                              /s/ Joel Schneider
                              JOEL SCHNEIDER
                              United States Magistrate Judge