[Doc. No. 74]

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY
## CAMDEN VICINAGE

JAMIE DEE WORSTER-SIMS
AND ASHLEE SIMS, H/W

       Plaintiffs,

  v.

TROPICANA ENTERTAINMENT,
INC., et al.,

      Defendants.

Civ. No. 13-1981 (RBK/JS)

### MEMORANDUM OPINION AND ORDER

This matter is before the Court on the "Motion for Leave to Amend Answer to Include Third-Party Complaint Against Beau Cantera" filed by defendant City of Atlantic City ("Atlantic City") [Doc. No. 74]. The Court is in receipt of plaintiffs' opposition [Doc. No. 79] and Atlantic City's reply [Doc. No 81]. The Court recently held oral argument.[1]

Atlantic City seeks to amend its answer to include a third-party complaint against plaintiff's cousin, Beau Cantera.[2] On June 2, 2014, the Court denied defendants' first attempt to join

---

[1] Although the instant motion was filed by Atlantic City, all defendants join in the motion. All defendants were invited to file supporting briefs if they so chose (see July 11, 2014 Order, at 8 [Doc. No. 71]), and they participated at the September 2, 2014 oral argument.

[2] All references to plaintiff shall refer to Jamie Dee Worster-Sims, the plaintiff who was physically injured by defendants' alleged tortious and unconstitutional conduct.

Cantera. See June 2, 2014 Memorandum Opinion and Order [Doc. No. 59]. The Court noted that in order to join Cantera defendants had to show that Cantera owed plaintiff a duty of care. Id. at 10. After analyzing the proposed third-party complaint in light of the applicable case law, the Court held that no such duty existed. Id. at 18. Atlantic City's subsequent motion for reconsideration was also denied [Doc. No. 71]. Atlantic City now argues that the "rescue doctrine" salvages its claim against Cantera. The Court disagrees and will deny Atlantic City's motion. Atlantic City also repeats its standing defense which will also be denied.

**BACKGROUND**

The background for this motion summarized in the Court's previous Opinion has not changed. Plaintiff alleges that in May of 2011, plaintiff and his cousin, Beau Cantera ("Cantera"), were forcibly removed from the Providence nightclub by Atlantic City Police Officer Jones and security personnel and/or employees of Tropicana. Compl. at ¶¶ 29-31. Plaintiff alleges that while he was being pushed out of the nightclub, his shoe fell off. Id. at ¶ 33. Plaintiff alleges that while he "attempted to return to the interior of the nightclub . . . to retrieve his missing shoe . . . he was struck in the head with a closed fist by [d]efendant, [Officer] Michael Jones." Id. at ¶¶ 34-35. Plaintiff claims that Officer Jones acted without justification and was not provoked by him. Id. at ¶ 38. Plaintiff also alleges that defendants acted

2

with deliberate indifference to his "obvious need for medical assistance" and that as a result of the attack he suffered serious and permanent injuries, including traumatic brain injuries. Id. at ¶¶ 41, 45.

As noted, this is defendant's "third bite at the apple." In its previous Opinion denying defendants' motions, the Court initially found that because there was no undue delay, bad faith or dilatory motives on the part of the defendants, and an absence of substantial prejudice to the plaintiffs, all within the meaning of Fed. R. Civ. P. 15, only the futility of the proposed amendment need be considered. See June 2, 2014 Order, at 5-6. Nonetheless, the Court denied the motions, finding that defendants' proposed amended third-party claims for contribution and/or indemnification were futile because Cantera and Officer Jones were not joint tortfeasors and Cantera owed no duty to plaintiff to anticipate the actions of Officer Jones. See id., at 18-22. Atlantic City subsequently filed a motion for reconsideration [Doc. No. 60]. In that motion Atlantic City argued the Court erred in part by failing to consider plaintiff's cause of action against Cantera under New Jersey's "rescue doctrine."

Although the Court denied the motion for reconsideration, it granted Atlantic City leave to file a renewed motion to amend its pleading. See July 11, 2014 Order [Doc. 71]. The Court wanted to be confident that Atlantic City had a full and fair opportunity to

3

brief and argue the "rescue doctrine" in view of its claim that this did not occur. Atlantic City can certainly not make the same claim now.

**DISCUSSION**

As stated supra, the Court now only considers the futility of the amendment. Courts deem an amendment futile if it fails to state a cause of action. Cureton v. Nat'l Collegiate Athletic Ass'n, 252 F.3d 267, 273 (3d Cir. 2001). Thus, "[w]hen determining whether the amended complaint is futile, a district court uses the same standards that it considers in the context of a motion to dismiss under Fed. R. Civ. P. 12(b)(6)." Badger v. City of Philadelphia Office of Prop. Assessment, 563 Fed. Appx. 152, 154 (3d Cir. 2014) (citing Burtch v. Milberg Factors, Inc., 662 F.3d 212, 231 (3d Cir. 2011)). In deciding a 12(b)(6) motion, "a court must consider only the complaint, exhibits attached to the complaint, matters of public record, as well as undisputedly authentic documents if the complainant's claims are based upon these documents." Id. at *5 (citing Mayer v. Belichick, 605 F.3d 223, 230 (3d Cir. 2010)).

Atlantic City contends that: (1) plaintiff does not have standing to contest the joinder of Cantera and (2) the rescue doctrine salvages its claim against Cantera. Each argument is considered in turn.

**1. Standing**

4

As a threshold matter, Atlantic City argues that plaintiff lacks standing to contest the futility of the proposed amendment. See Reply at 3 (citing Custom Pak Brokerage, LLC v. Dandrea Produce, Inc., C.A. 13-5592, 2014 WL 988829, at *2 (D.N.J. Feb. 27, 2014)). Atlantic City seems to argue, therefore, that if plaintiff cannot raise a futility defense, its motion must be granted. However, the Court previously stated in its June 2, 2014 Order, to procure the "just, speedy and inexpensive determination of every action and proceeding" (Fed. R. Civ. P. 1) courts may consider whether an amendment fails as a matter of law to warrant any relief. This is precisely what the Court is doing. This is consistent with Third Circuit authority that provides that if an amendment fails to state a claim upon which relief may be granted, leave to amend may be denied as futile. See In re Burlington Coat Factory Secs. Litig., 114 F.3d 1410, 1434 (3d Cir. 1997). Additionally, Atlantic City neglects to recognize that the Court has discretion under Fed. R. Civ. P. 14 to determine whether joinder of a third-party defendant is appropriate. Spencer v. Cannon Equip. Co., C.A. 07-2437 (JBS), 2009 WL 1883929, at *2 (D.N.J. June 29, 2009) (citing Remington Arms Co. v. Liberty Mut. Ins. Co., 748 F. Supp. 1057, 1068 (D.Del. 1990)("[J]oinder of third-party defendants under Rule 14 is not automatic; rather, the decision to permit joinder rests with the sound discretion of the trial court.") (citation omitted).

Further, even if plaintiff did not have standing to object to Atlantic City's motion the motion would still be denied. Courts have the "inherent authority to dismiss claims *sua sponte* for failure to state a claim upon which relief may be granted." Huafeng Xu v. Walsh, C.A. 13-5626 (ES/MAH), 2014 U.S. Dist. LEXIS 123732, at *3-4 (citing Bintliff-Richie v. Am. Reinsurance Co., 285 Fed. Appx. 940, 943 (3d Cir. 2008)("The District Court has the power to dismiss claims *sua sponte* under Rule 12(b)(6)."). Thus, since a Rule 12(b)(6) standard applies in this context, the Court may address the futility of Atlantic City's rescue theory whether or not plaintiff has standing to raise the argument.

### 2. Atlantic City's Pleading[3]

---

[3] Atlantic City made the same mistake with regard to the instant motion that defendants made when they filed their initial motion to amend. That is, despite the fact that the Court must review the proposed third-party complaint on a Fed. R. Civ. P. 12(b)(6) standard, defendants insist on referring to their alleged "record", including deposition testimony, rather than focusing on the allegations in the third-party complaint. As noted on several occasions, the Court is limited to the allegations in the proposed third-party complaint. See July 11, 2014 Order, at 8 ("As is clearly set forth in the applicable case law, the Court's analysis will be confined to what is in the proposed third-party complaint, not arguments and citations only included in defendant's briefs [and oral argument]."). Thus, although Cantera testified that he was turning away from Officer Jones right before plaintiff was hit, and therefore could not have been in danger requiring rescue (Cantera Dep. T73:23-24), the Court will not consider that testimony in support of this Order denying defendant's motion. See Crozier v. Johnson & Johnson Consumer Companies, Inc., 901 F. Supp. 2d 494, 500 (D.N.J. 2012) (declining to consider deposition testimony on

As the Court previously held, Atlantic City cannot join Cantera unless they are joint tortfeasors. See June 2, 2014 Order, at 9-10.[4] In order to prove that Cantera and Atlantic City are joint tortfeasors, Atlantic City now relies on the rescue doctrine.

Under New Jersey law, the rescue doctrine creates a "duty of care on the part of a person who through his own negligence placed a third party in a situation of imminent peril that invited the plaintiff rescuer to intervene." Saltsman v. Corazo, 317 N.J. Super. 237, 247 (App. Div. 1998). The rescue doctrine was created with two goals in mind: first, to prevent a rescuer from being found contributorily negligent as a matter of law and second, to create a duty of care on the part of the one whose

_____

a 12(b)(6) motion because it was material extraneous to the pleadings).

[4] The Court previously stated:

> Thus, in order to determine whether defendants and Cantera are "joint" tortfeasors . . . the Court must determine whether they are subject to common liability to plaintiff at the time plaintiff's cause of action accrued. Stated differently, the Court must determine whether Worster-Sims has an actionable claim against Cantera under the theory that Cantera's alleged negligent and unlawful actions towards Officer Jones were the proximate cause of Worster-Sims's injuries. Stated even more succinctly, Cantera cannot be liable to Worster-Sims unless he owed Worster-Sims a duty of care.

June 2, 2014 Order, at 9-10 (internal citation omitted).

7

negligence invited the rescuer to intervene. <u>Saltsman</u>, 317 N.J. Super. at 247. In a common rescue doctrine scenario, the "rescuer plaintiff sues the rescued victim who is either completely, or partially, at fault for creating the peril that invited the rescue." <u>Id.</u> at 249.

Atlantic City's third-party complaint against Cantera consists of the following allegations:

> 3. On or about April 30, 2011, Third Party Defendant Beau Cantera was a patron at Club Providence, located in Atlantic City, New Jersey. He was attending a bachelor party which lasted into the early morning hours of May 1, 2011 and was accompanied by his cousin, Plaintiff Jamie Worster-Sims.

> 4. After being advised by Club security to leave, Third Party Defendant Beau Cantera refused to leave the club.

> 5. Cantera was intoxicated and acting in a disorderly and aggressive manner.

> 6. After Atlantic City Police Officer Michael Jones arrived, Cantera and Sims began to leave to club. While leaving, Canter made profane comments toward Officer Jones.

> 7. One of the Comments was "f[---] these punk ass cops".

> 8. Officer Jones, along with bouncers from Club Providence, followed Cantera and Sims outside the Club.

> 9. Cantera raised his finger in a threatening manner, pushed it into Officer Jones' chest, and called Officer Jones an [sic] "m f'er".

> 10. By assaulting Officer Jones, Cantera instigated and caused an altercation.

11. Officer Jones pushed Cantera away to create a safe distance between them.

12. Plaintiff Sims immediately came to the aid/rescue of his cousin, Cantera.

13. Prior to Cantera's interaction with Officer Jones, Plaintiff had no interaction with Officer Jones.

14. In coming the aid/rescue of his cousin, Plaintiff Sims became involved in the altercation.

15. As a result of attempting to aid/rescue Cantera from the altercation, Plaintiff Sims alleges to have sustained injuries.

16. As a result of the alleged injuries, Plaintiff Sims initiated a lawsuit against the City of Atlantic City, Officer Michael Jones, and others.

17. Third Party Defendant Beau Cantera had a duty to conduct himself in a reasonable manner and to refrain from assaulting Atlantic City Police Officer(s) and/or otherwise committing unlawful acts.

18. On the aforementioned date, Third Party Defendant Beau Cantera breached that duty when he became intoxicated and committed unlawful acts.

19. On the aforementioned date, Third Party Defendant Beau Cantera instigated and initiated a physical altercation when he assaulted Defendant Police Officer Michael Jones.

. . .

23. But for the actions/conduct of Third Party Defendant Beau Cantera, the physical altercation would not have taken place, and Plaintiff Jamie Worster[-]Sims would not have come to the rescue of Cantera, and would not have brought claims against Defendant City of Atlantic City.

Proposed Am. Compl. [Doc. No. 74-8]. Atlantic City's theory that

the rescue doctrine applies because plaintiff attempted to

"aid/rescue" Cantera is futile because: (1) Atlantic City has

not plead a viable cause of action applying the rescue doctrine

and (2) even if the rescue doctrine was sufficiently plead, the

harm that came upon plaintiff was not foreseeable.

    To sufficiently plead a cause of action under the rescue

doctrine, a plaintiff must allege there was imminent peril and

present danger compelling the need for intervention. See Flint

v. Langer Transp. Corp., 762 F. Supp. 2d 735 (D.N.J. 2011)

aff'd, 480 Fed. Appx. 149 (3d Cir. 2012) (the rescue doctrine

"allows a rescuer to bring suit against the party whose

negligence placed the victim in a position of imminent peril, so

as to invite the rescue"); see also Saltsman, 317 N.J. Super. at

247 ("The doctrine, in its traditional form, also created a duty

of care on the part of a person who through his own negligence

placed a third party in a situation of imminent peril that

invited the plaintiff rescuer to intervene."). In Flint, the

defendant sought the plaintiff's help transferring his load of

corrosive materials, improperly stored in his tanker, into

defendant's tanker, which was properly equipped for the

material's containment. Id. at 741. They waited some time before

making the transfer. Id. As a result, the court found that

summary judgment was appropriate and the application of the

rescue doctrine improper because "the situation was not so

immediate or perilous to require the sort of instantaneous

10

action found in rescue doctrine cases." Id.; see also Connelly v. Redman Dev. Corp., 533 P.2d 53, 55 (Colo. App. 1975)(rescue doctrine did not apply as a matter of law when fallen individual needed medical attention but was not in imminent peril); Ha-Sidi by Ha-Sidi v. S. Country Cent. Sch. Dist., 148 A.D.2d 580 (N.Y. App. Div. 1989) (fighting eighth grade boys were not at risk of serious injury so their peril did not invite rescue).

Atlantic City's proposed third-party complaint is futile because it does not plead facts to show that Cantera was in imminent peril and needed to be rescued. The pleading merely avers that after Cantera assaulted Officer Jones, and the officer pushed Cantera away, plaintiff immediately came to Cantera's aid. Proposed Am. Compl. ¶ 12. This is not enough to apply the rescue doctrine because there is a complete absence of any averments indicating that Cantera was in imminent peril. Atlantic City pleads and argues that before plaintiff was hit Cantera assaulted Officer Jones. Id. ¶ 9. After the assault, plaintiff approached the officer and was punched in the face. Compl. ¶ 35. It would be incongruous to hold that a person who just assaulted a police officer needs to be rescued. If anything, it was Officer Jones who needed to be rescued from Cantera and not vice-versa. The rescue doctrine does not apply, like in Flint, where the alleged negligent tortfeasor does not create an imminent peril from which he needs to be rescued.

Related to the Court's finding that Atlantic City failed to plead that Cantera was in imminent peril, there are no allegations in the pleading sufficient to show that Cantera was in immediate danger requiring rescue. Other New Jersey cases in which the court evaluated the applicability of the rescue doctrine illustrate why the doctrine is inapplicable here. In Saltsman, the court applied the rescue doctrine where the plaintiff came to the aid of his friend who was being physically assaulted by three other men. 317 N.J. Super. at 241. The court found that the altercation "invited the rescue" and remanded the matter for a jury determination as to whether the victim was negligent in creating his peril. Id. at 249. In Eyrich for Eyrich v. Dam, the court applied the rescue doctrine where the plaintiff rescued a child from a circus leopard attack. 193 N.J. Super. 244, 256 (App. Div. 1984). Additionally, in Burns v. Mkt. Transition Facility of New Jersey, the rescue doctrine applied where the plaintiff sustained injuries while rendering emergency aid to a driver trapped in his crushed vehicle following a collision in which the driver was hit then forced into oncoming traffic. 281 N.J. Super. 304, 305 (App. Div. 1995). This case is not remotely similar to Saltsman, Eyrich or Burns. As noted, Cantera did not need to be rescued.

Turning to cases where the rescue doctrine was found inapplicable, in Howard v. Holmes, the court found the rescue

doctrine did not apply where a neighbor asked the plaintiff to help him remove a chainsaw which was turned off and lodged in a tree. C.A. A-6452-08T3, 2011 WL 13833 (N.J. Super. Ct. App. Div. Apr. 16, 2010). The court found because "immediacy [was] lacking . . . [d]efendant's request for help was not the 'cry of distress' present in the cases where the courts have applied the rescue doctrine." Id. at *3. Similarly, in Estate of Desir ex rel. Estiverne v. Vertus, the Supreme Court of New Jersey declined to apply the rescue doctrine where a neighbor sought out the plaintiff when he suspected something was awry in his apartment. 214 N.J. 303 (2013). The neighbor went into the defendant's apartment to investigate and was killed by the intruder inside. Id. The court found that no cause of action existed because when the defendant reached the plaintiff's house, he had "reached a place of safety and [the plaintiff] did not act in a way that would rescue [the defendant]." Id. at 321.

Here, it is plain that plaintiff's actions are distinguishable from the factual scenarios in Saltsman, Eyrich and Burns where the rescue doctrine was applied. In Saltsman, the plaintiff came to the aid of his friend who was in the process of being assaulted by three other men. In Eyrich, the plaintiff endeavored to save a child being attacked by a leopard. In Burns, the plaintiff rescued a driver trapped in a crushed vehicle following an accident in which the driver was

hit by oncoming traffic. In contrast, the averments in Atlantic
City's pleading indicate that at the time plaintiff was punched
in the face by Officer Jones, there was nothing to rescue
Cantera from. Cantera simply did not need to be rescued.
Further, as in Howard, here, immediacy is lacking. Atlantic City
has not pleaded facts to show there was an immediate danger that
Cantera had to be rescued from. Moreover, as in Howard, there
was no "cry of distress"; rather, there are no allegations that
Cantera asked or motioned for assistance. Additionally,
analogous to Estate of Desir, Atlantic City has not described
any actions by plaintiff that were made in an effort to "rescue"
Cantera. At best, Atlantic City only offers a "formulaic
recitation of the elements of a cause of action" by making the
bare assertion that plaintiff came to Cantera's rescue. Bell
Atl. Corp. v. Twombly, 550 U.S. 544, 545 (2007); see also
Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) ("Threadbare
recitals of the elements of a cause of action, supported by mere
conclusory statements, do not suffice.") (citation omitted). In
short, simply because Atlantic City generally alleges plaintiff
went to rescue Cantera does not make it so. Plaintiff has not
pleaded supporting allegations to show that Cantera was in
danger and in immediate need of being rescued. See id.

### 3. Foreseeability

14

Additionally, even if the Court found that Atlantic City sufficiently pleaded a cause of action under the rescue doctrine, the Court would still find the claim futile. The harm that came upon plaintiff was not foreseeable and, therefore, Cantera owed no duty to plaintiff. Under New Jersey law, "[w]hether a duty of care exists is a question of law that must be decided by the court." Jerkins ex rel. Jerkins v. Anderson, 191 N.J. 285, 294 (2007). "In making that determination, the court must first consider the foreseeability of harm to a potential plaintiff, and then analyze whether accepted fairness and policy considerations support the imposition of a duty." Id. (citations omitted). In order for a harm to be foreseeable, the risk of injury to another must be "within the range of apprehension." Sander v. HR Trust Servs., LLC, C.A. 08-1383 (GEB), 2009 WL 3055368, at *2 (D.N.J. Sept. 21, 2009) (citing Jerkins, 191 N.J. at 294).

While foreseeability does not impose a duty on its own, it is a "crucial element in determining whether imposition of a duty on an alleged tortfeasor is appropriate." Id. Where foreseeability is established, "the question whether a duty exists is one of fairness and policy that implicates many factors, [including] the relationship of the parties, the nature of the attendant risk, the opportunity and ability to exercise care, and the public interest in the proposed solution." Id. at

15

*2 (quoting <u>Carvalho v. Toll Bros. & Developers</u>, 143 N.J. 565,
573 (1996)). Additionally, "it is essential to recognize not the
interests of the particular individuals before the [c]ourt, but
instead to take careful consideration of the effect that the
creation of duty will have more generally on the public." <u>Estate</u>
<u>of Desir ex rel. Estiverne v. Vertus</u>, 214 N.J. 303, 328 (2013).
Part of that inquiry involves the consideration of how that duty
"will work in practice." <u>Id.</u>

     As applied in the rescue doctrine context, "an actor is
liable for harm sustained by a rescuer 'where the conduct of the
actor has created a danger only to himself, if at the time of
such conduct he should reasonably anticipate that others might
attempt to rescue him from his self-created peril, and sustain
harm in doing so.'" <u>Estate of Desir</u>, 214 N.J. at 321 (2013)
(citing Restatement (Second) of Torts § 445 comment d).
Nonetheless,

> [W]hen the harm suffered by the rescuer is different
> from the harms whose risks would be expected to arise
> in the rescue, the actor is not liable because the
> harm is outside the scope of liability. Thus, when an
> unusual type of harm occurs in a rescue, the inquiry
> is whether, at the outset of that particular rescue,
> the risk of such harm would reasonably be anticipated.

Restatement (Third) of Torts: Liability for Physical Harm §
32(c) (2005). In other words, if the injury the rescuer suffered
could not be reasonably anticipated to arise from the rescue,

the rescued person is not liable to the rescuer. See also Ruiz v. Mero, 189 N.J. 525, 529 (2007) (describing the importance of foreseeability to the applicability of the rescue doctrine). Other jurisdictions outside of New Jersey applying the rescue doctrine have similarly focused on the importance of foreseeability in determining whether a duty was owed. See, e.g., Leavitt v. Brockton Hosp., Inc., 454 Mass. 37, 47 (2009) (declining to apply the rescue doctrine because plaintiff cited "no authority to support his claim that a collision between a police cruiser and a vehicle unrelated to the accident to which the officer in the cruiser was responding is a risk that would be anticipated to arise from the rescue."); Snellenberger v. Rodriguez, 760 S.W.2d 237, 238 (Tex. 1988) ("The rescue doctrine does not dispense with the requirement of foreseeability in negligence causes of action.")

With these considerations in mind, the Court now turns to Atlantic City's proposed third-party complaint. Here, Cantera poked Officer Jones in the chest and in response, the officer punched plaintiff in the face. Atlantic City alleges in their third-party complaint that "[i]t was foreseeable that if Beau Cantera became intoxicated and instigated an altercation, that his Cousin, Plaintiff Jamie Worster-Sims would come to his rescue in attempt to aid his cousin." Proposed Am. Compl. ¶ 27. The Court disagrees.

17

The Court finds that as a matter of law the harm that came upon plaintiff following Cantera's actions were not foreseeable. Looking at paragraphs 11-13 of the proposed third-party complaint, it alleges that plaintiff immediately came to Cantera's rescue after Cantera assaulted Offices Jones and the officer pushed Cantera away. Proposed Am. Compl. ¶¶ 11-13. The Court finds that it was not foreseeable that plaintiff would attempt to rescue Cantera after he assaulted a police officer. Atlantic City does not allege in their proposed third-party complaint that plaintiff in any way provoked Officer Jones or was otherwise involved in the situation between Cantera and the officer before being punched in the face. See Compl. ¶ 35. Indeed, Atlantic City acknowledges that "[p]rior to Cantera's interaction with Officer Jones, Plaintiff had no interaction with Officer Jones." Proposed Am. Compl. ¶ 13. It is not foreseeable that plaintiff would or could come to the rescue of someone who assaulted a police officer. Further, it was not foreseeable that Officer Jones would react by punching a third person in the face.[5]

---

[5] The Court similarly explained in its June 2, 2014 Order:

> The Court finds that it is not reasonable for Cantera to foresee that if he poked Officer Jones, the Officer would react by punching plaintiff in the face. In the absence of a duty of care owed to Worster-Sims, Cantera cannot be held liable for injuries Worster-Sims sustained as a result of Officer Jones's actions.

18

Additionally, as the Court previously stated, to impose a
duty in this situation would be counter to the public interest,
particularly based on the position of the parties. See Hopkins
v. Fox & Lazo Realtors, 132 N.J. 426, 439 (1993) ("The actual
imposition of a duty of care and the formulation of standards
defining such a duty derive from considerations of public policy
and fairness. . . . That inquiry involves identifying, weighing,
and balancing several factors - the relationship of the parties,
the nature of the attendant risk, the opportunity and ability to
exercise care, and the public interest in the proposed
solution.") (internal citations omitted). To permit Atlantic
City to foist all or partial blame on Cantera because Officer
Jones punched plaintiff in the face would, in the Court's view,
unreasonably stretch traditional tort notions of duty and
foreseeability. The Court has already denied Atlantic City's
notion that its "but for" or "chain of events" theory is viable.

---

> As noted, in determining whether a duty exists the
> Court must examine fairness and public policy. The
> Court is concerned with the potentially limitless
> liability that could result if a person were under a
> duty to foresee that his or her behavior would
> ultimately lead a police officer to punch a third-
> party. Defendants' "chain of events" theory of
> liability could ensnare all sorts of people who have
> no legitimate connection to plaintiff's allegations
> against Officer Jones[.]

June 2, 2014 Order, at 12-13 (internal citations omitted).

19

See June 2, 2014 Order, at 12-13. Even in the rescue doctrine context the Court does not find a duty exists to "rescue" someone who assaults a police officer. This duty would not "work in practice." Estate of Desir, 214 N.J. at 328. Further, the Court notes that Atlantic City has not provided, and the Court has not discovered, a single case applying the rescue doctrine where the peril is alleged to stem from the tortious or unconstitutional acts of a police officer. Thus, because the actions of Officer were Jones were not foreseeable, and because imposing a duty in this situation would be against public policy, the Court declines to find the rescue doctrine applicable.

The rescue doctrine does not apply merely because the proposed amended complaint pleads that plaintiff was "coming to the aid" of Cantera. Plainly stated, if Atlantic City has not plead that Cantera was in imminent peril or danger, the Court is at a loss what plaintiff allegedly rescued Cantera from or what plaintiff endeavored to achieve in his efforts to "aid/rescue" Cantera. The Court thus echoes the words of the New Jersey Supreme Court: "the function of tort law is deterrence and compensation, and absent circumstances in which the definition of the duty can be applied both generally and justly, this Court should stay its hand." Estate of Desir, 214 N.J. at 329-30.

The Court has now permitted Atlantic City three opportunities to plead a viable third-party complaint against Cantera. Each of these attempts has failed. Thus, Atlantic City's motion is denied with prejudice. See Gunn v. First Am. Fin. Corp., 549 Fed. Appx. 79, 81-82 (3d Cir. 2013) (denial without leave to amend is justified where an amendment would be futile).

Accordingly, and for all the foregoing reasons,

IT IS HEREBY ORDERED this 10th day of September, 2014, that defendant's Motion for Leave to Amend Pleading to Include a Third-Party Complaint Against Beau Cantera [Doc. No. 74] is DENIED.

/s/ Joel Schneider
JOEL SCHNEIDER
United States Magistrate Judge