NOT FOR PUBLICATION                                    (Doc. No. 32)

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF NEW JERSEY**
**CAMDEN VICINAGE**

————————————————————      :
                                                        :
JAMIE DEE WORSTER-SIMS and           :
ASHLEE SIMS,                                       :
                                                        :
                    Plaintiffs,                       :
                                                        :            Civil No. 13-1981 (RBK/AMD)
          v.                                            :
                                                        :                  **OPINION**
TROPICANA ENTERTAINMENT, INC.     :
et al.,                                                 :
                                                        :
                    Defendants.                     :
————————————————————      :

**KUGLER**, United States District Judge:

This matter comes before the Court on the motion of Defendant Tropicana Entertainment,

Inc. d/b/a Tropicana Casino and Resort ("Tropicana"), for partial summary judgment pursuant to

Federal Rule of Civil Procedure 56 (Doc. No. 32).  The subject of this motion is Tropicana's

crossclaim for declaratory relief for contractual indemnification and defense against Defendant

Providence AC, Inc. ("Providence").   For the reasons stated herein, Tropicana's motion will be

**GRANTED**.

## I.        FACTUAL BACKGROUND

This matter arises out of a lawsuit filed by Jamie Dee Worster-Sims ("Plaintiff") and

Ashlee Sims, for an alleged assault that took place in the early morning hours of May 1, 2011 by

a uniformed Atlantic City Police Officer, Michael Jones ("Jones").  (Def. Tropicana's Br.

("Def.'s Br.") at 1.)  Prior to the incident Plaintiff was a patron at Providence, a nightclub

operating as a tenant within Tropicana's hotel and casino property.  (Id.)  On March 28, 2013,

Plaintiff filed suit against Tropicana, Providence, Jones and numerous other named and unknown defendants for state law tort claims and federal civil rights violations.  (Compl.)  Tropicana answered Plaintiff's Complaint on June 4, 2013, which included a crossclaim against Providence for contractual indemnification (Doc. No. 10).  Then, on March 6, 2016, Tropicana filed this motion for partial summary judgment, seeking declaratory relief on the cross claim for indemnification against Providence.

The subject of the present motion is an indemnification provision in a lease between Tropicana and Providence, which allegedly requires Providence provide full defense to Tropicana, as well as reimbursement for attorney's fees, in the event that Providence, one of its employees, or one of its agents is responsible for damages resulting from personal injury.

On March 26, 2007, Providence entered into a lease agreement with Adamar of New Jersey, Inc. ("Adamar"), for a ten year term.  (Def. Tropicana's Statement of Undisputed Material Facts ("Def.'s SMF") ¶ 1.)  Then, on November 4, 2009, Tropicana purchased the assets of Adamar, pursuant to a bankruptcy purchase order.  (Id. ¶ 2.)  As part of that bankruptcy purchase order, Tropicana entered into and executed an Assignment and Assumptions Agreement with respect to the leases existing between Adamar and its various tenants.  (Id. ¶¶ 3-4.)  As a result of the unexpired lease agreement between Providence and Adamar, and Tropicana's assumption of that lease, Tropicana currently has a lease with Providence, which is effective through March 27, 2017.  (Def.'s Br. at 6; see Ex. B to Def.'s Br., Lease Agreement § B).  The lease contains an indemnification clause, which states in relevant part:

> Tenant will defend and will indemnify Landlord and save it
> harmless from and against any and all claims, actions, damages,
> liability and expense (including, but not limited to, reasonable
> attorneys' fees and disbursements) connected with … personal
> injury … arising from, related to, or in connection with the
> performance of Tenant's Work, the occupancy of the Premises or

2

occasioned wholly or in party by act or omission of Tenant, its contractors, subcontractors, subtenants, licensees or concessionaires, or its or their respective agents, servants or employees on any part of Landlord's property or The Quarter or by reason of Tenant's breach of any of the provisions of this lease. Tenant shall not, however, be liable for damages or injury occasioned by the negligence or willful misconduct of Landlord or its agents, employees, contractors or servants, unless such damage or injury arises from perils against which tenant is required by this lease to insure.

(Id. Art. 10, § 10.1(a).)  After the commencement of Plaintiffs' action, Tropicana tendered its defense to Providence on the same day it answered Plaintiff's complaint.  (Def.'s Br. at 2.) Providence has since not accepted.  (Def.'s SMF ¶ 7.)

In support of its claim for defense and attorney's fees from Providence, Tropicana contends that Jones was acting as an agent of Providence when he allegedly assaulted Plaintiff, and as such Providence owes full defense to Tropicana by virtue of the lease agreement.  (Def.'s Br. at 1.)  On May 1, 2011, the night of the alleged incident, Jones was employed as a Special Detail Police Officer for the City of Atlantic City.  (Def.'s SMF ¶ 5.)  Tropicana alleges that Jones was assigned to Providence, according to an agreement between the Atlantic City Police Department ("ACPD") and Providence.  (Def.'s SMF ¶ 6; Ex. A to Def. Tropicana's Rep. Br. ("Def.'s Rep. Br."), ACPD Special Employment Voucher ("ACPD Voucher").)  This agreement states that from 11:30 p.m. on April 30, until 5:00 a.m. on May 1, 2011, Jones worked a special employment detail within Tropicana for the "Customer" Providence.  (Id.)

Providence counters by alleging Tropicana was negligent, and asserting that the lease does not require indemnification for damages incurred by the negligence of the landlord.[1]  In

---

[1] Plaintiffs' also filed an Opposition Brief to Tropicana's Motion for Partial Summary Judgment.  (See Pls.' Opp'n Br. to Def. Tropicana's Mot. for Partial Summ. J. (Doc. No. 34).)  Plaintiffs have not demonstrated that they have standing to challenge Tropicana's motion.  See Taliaferro v. Darby Twp. Zoning Bd., 458 F.3d 181, 188 (3d Cir. 2006 ("The three elements necessary to satisfy the irreducible constitutional minimum of standing are: (1) the plaintiff must have suffered an injury in fact—an invasion of a legally protected interest which is (a) concrete and

support of this argument, Providence points to several other alleged facts.[2]  According to Providence, Tropicana had security officers who were responsible for patrolling The Quarter, the section of Tropicana where Providence and other restaurants and shops are located, including the area where Plaintiff was allegedly struck by Jones.  (Def. Providence's Counter Statement of Material Facts ("Def.'s CSF") ¶ 1; see Ex. A to Def. Providence's Opp'n Br. ("Def.'s Opp'n"), Deposition Testimony of Shawn Bannon ("Bannon Dep.") at 30-33.)[3]  Additionally, Tropicana had security cameras at each end of The Quarter, for the safety of the guests and patrons, which had the capability of viewing the area where the incident took place.  (Id. at 57:13-58:18.) Tropicana's security and surveillance department would have attempted to monitor and record any activity in The Quarter.  (Id. at 58:19-59:19.)  However, the camera viewpoints changed, as the cameras moved automatically, and the VCR recording equipment did not always work properly.  (Id. at 59:6-8.)  Any video images of The Quarter, which each camera recorded, would be sent automatically to the security office for Tropicana.  (Id. at 59:20-25.)  After the alleged incident with Jones, Tropicana security informed Plaintiff of his ejection from the premises.  (Id. at 75:23-76:1.)

---

particularized, and (b) actual or imminent, not conjectural or hypothetical; (2) there must be a causal connection between the injury and the conduct complained of; and (3) it must be likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision.") (citing United States v. Hays, 515 U.S. 737, 742-43 (1995)). Even if the Court were to entertain Plaintiffs' arguments, it notes that they are entirely unsupported by the record, make numerous inferences that the Court cannot make, and rely heavily on Plaintiffs' legal conclusions.  With regard to Plaintiffs' primary arguments, as discussed infra, the lease agreement and indemnification provision therein are valid, the Court accepts that Jones was detailed to Providence on the morning of the incident, the fact that Jones was in The Quarter during the alleged incident with Plaintiff does not affect the outcome of this Court's decision.  For these reasons, the Court declines to address Plaintiffs' arguments in the remainder of this Opinion.

[2] Providence also generally denies that Jones was assigned to Providence by virtue of an agreement between the ACPD and Providence, yet cites no evidence to support its position.  (See Def. Providence's Resp. to Tropicana's SMF ¶ 6.)

[3] Providence claims that Tropicana had security guards stationed in the area where the alleged assault of Plaintiff by Jones took place, but points to no evidence in the record supporting this allegation.  (See Def.'s CSF ¶ 5.)

4

In reply, Tropicana denies that it could exercise any control over Jones, and could not be expected to stop his wrongful conduct.  Tropicana alleges that during his assignment to special employment detail, Jones was acting within his official capacity, and he was bound by all rules, regulations and policies of the ACPD.  (Ex. B to Def.'s Rep. Br., ACPD General Order 016 of 2005.)  Jones was subject to recall at any time by the ACPD, and was required to wear his uniform while he was on special employment detail.  (Id. § IV.)  As part of the special employment detail he was supervised by a sergeant of the ACPD, whose duty is was to undertake periodic inspections of all ACPD personnel assigned to that special employment detail.  (Id. § X.)  In the event that the hiring vendor requested Jones to relocate to a position other than the one he was scheduled for, Jones was to comply with the request and immediately notify his patrol supervisor, who would in turn asses the change and take appropriate action as may be required.  (Id. § V.)  Finally, Tropicana notes that, though engaged by Providence, Jones was paid by Atlantic City.  (Id. § IX.)

## II.    LEGAL STANDARD

The Court should grant a motion for summary judgment when the moving party "shows that there is no genuine dispute as to any material fact and that the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  An issue is "material" to the dispute if it could alter the outcome, and a dispute of a material fact is "genuine" if "a reasonable jury could return a verdict for the nonmoving party."  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986); Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986) ("Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine issue for trial.'") (quoting First Nat'l Bank of Az. v. Cities Serv. Co., 391 U.S. 253, 289 (1968)).  In deciding whether there is any genuine issue for trial, the court is not to

weigh evidence or decide issues of fact.  <u>Anderson</u>, 477 U.S. at 248.  Because fact and credibility determinations are for the jury, the non-moving party's evidence is to be believed and ambiguities construed in its favor.  <u>Id.</u> at 255; <u>Matsushita</u>, 475 U.S. at 587.

Although the movant bears the burden of demonstrating that there is no genuine issue of material fact, the non-movant likewise must present more than mere allegations or denials to successfully oppose summary judgment.  <u>Anderson</u>, 477 U.S. at 256.  The nonmoving party must at least present probative evidence from which the jury might return a verdict in his favor.  <u>Id.</u> at 257.  The movant is entitled to summary judgment where the non-moving party fails to "make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial."  <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 322 (1986).

III.    **DISCUSSION**

    A.    **Declaratory Judgment Standard**

Tropicana seeks a declaratory judgment of its right to indemnification under the lease agreement, which would compel the defense and full reimbursement by Providence to Tropicana. Providence's legal obligation under the indemnification clause does not arise until Tropicana faces an actual claim for damages.

The Declaratory Judgment Act ("the Act") provides in relevant part that "[i]n a case of actual controversy within its jurisdiction … any Court of the United States, upon the filing of an appropriate pleading, may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought."  28 U.S.C. § 2201(a).  <u>Cf.</u> Fed. R. Civ. P. 57.  "The question in each case is whether the facts alleged show that there is a substantial controversy, between parties having adverse legal interests, 'of

6

sufficient immediacy and reality to justify judicial resolution.'"  Peachlum v. York, Pa., 333 F.3d 429, 433 (3d Cir. 2003).  "The difference between an abstract question and a 'controversy' contemplated by the Declaratory Judgment Act is necessarily one of degree, and it would be difficult, if it would be possible, to fashion a precise test for determining in every case whether there is such a controversy."  Md. Cas. Co. v. Pacific Coal & Oil Co., 312 U.S. 270, 273 (1941).  The declaratory judgment plaintiff bears the burden of proof.  Id. at 272.  Even if this Court has subject matter jurisdiction, it retains the discretion pursuant to the Declaratory Judgment Act to decline declaratory judgment jurisdiction.  See, e.g., Wilton v. Seven Falls Co., 515 U.S. 277, 282 (1995) (stating that "district courts possess discretion in determining whether and when to entertain an action under the Declaratory Judgment Act, even when the suit otherwise satisfies subject matter jurisdictional prerequisites").

The Court concludes that Tropicana's complaint does state an actual controversy, based on the circumstances in the present action.  First, Tropicana's claim is not based on some hypothetical set of facts.  Plaintiffs have filed suit against both Tropicana and Providence.  Tropicana has demanded that Providence indemnify it and Providence has refused.  In Plaintiff's pending lawsuit, there is some likelihood that Tropicana could be found liable for tortious acts committed by Jones.  As such, there is a "substantial and real" possibility that Providence will be called upon to indemnify Tropicana for such claims.  E.g., ACandS, Inc. v. Aetna Cas. and Sur. Co., 666 F.2d 819, 823 (3d Cir. 1981).  Granting or denying the motion would also have an impact on how each party proceeds with its defense in Plaintiffs' case.  Because Tropicana's motion bears on an actual controversy, the Court will decide this motion on the merits.  In order to determine whether declaratory relief is appropriate, the Court must address whether

Providence is subject to a valid indemnification provision in its lease with Tropicana, and if so,

whether Tropicana's own liability precludes its entitlement to indemnification.

### B.    The Indemnification Provision[4]

The Court will first assess whether Tropicana and Providence had a valid lease

agreement, and if so, what is the scope of the indemnification provision therein.  This is a matter

of contract interpretation, which is generally a question of law in New Jersey.  Smithkline

Beecham Corp. v. Rohm & Haas Co., 89 F.3d 154, 159 (3d Cir. 1996).  The Court's role is to

interpret the intent of the contracting parties at the time they entered into the contract, as

evidenced by the language of the contract and the surrounding circumstances.  Caldwell

Trucking PRP v. Rexon Tech. Corp., 421 F.3d 234, 244 (3d Cir.2005).  According to the New

Jersey Supreme Court, where the words of a contract are clear and unambiguous, "courts should

enforce contracts as made by parties."  Marchak v. Claridge Commons, Inc., 134 N.J. 275, 281

---

[4] The Court notes that state choice-of-law rules for the forum state govern supplemental state law claims under 28 U.S.C. § 1367 in federal question cases. See, e.g., Weikel v. Tower Semiconductor Ltd., 183 F.R.D. 377, 401 (D.N.J. 1998); United Mines Workers of American v. Gibbs, 383 U.S. 715, 726 (1966) (citing Erie R. Co. v. Thopkins, 304 U.S. 64 (1938)).

For contract claims, "[u]nder New Jersey law, if the parties to a contract agree that a particular state's law will govern their rights and duties under the contract, the courts will generally honor the agreement, unless: (a) the chosen state has no substantial relationship to the parties or the transaction and there is no other reasonable basis for the parties' choice, or (b) application of the law of the chosen state would be contrary to a fundamental policy of a state, which has a materially greater interest than the chosen state in the determination of the particular issue and which, under the rule of Restatement of Conflict § 187, would be the state of the applicable law in the absence of an effective choice of law by the parties." Christy v. We the People Forms and Serv. Ctr.s, USA, Inc., 213 F.R.D. 235, 239 (D.N.J. 2003) (citing Restatement (Second) of Conflict of Laws § 187; Newcomb v. Daniels, Saltz, Mongeluzzi & Barrett, Ltd., 847 F. Supp. 1244, 1248 (D.N.J. 1994)).

Here, the lease agreement specifically provides that the lease and the rights and obligations are to be governed by New Jersey law.  (Ex. B to Def.'s Br., Lease Agreement Art. 21, § 21.29.)  New Jersey has a substantial relationship with the parties, as the property governed by the lease is located in the state of New Jersey, Tropicana is doing business in New Jersey, and Providence is a citizen of New Jersey.  The Court deduces no reason why the application of New Jersey law would be contrary to a fundamental policy of a state, which has a materially greater interest than the chosen state in the determination of the particular issue and which, under the rule of Restatement of Conflict § 187, would be the state of the applicable law in the absence of an effective choice of law by the parties. Accordingly, the Court will apply New Jersey law to its examination of the validity of the lease agreement and the provisions therein.

(1993) (quoting <u>Vasquez v. Glassboro Serv. Ass'n</u>, 83 N.J. 86, 101 (1980)).  This same principle applies to interpreting indemnity provisions.  <u>Mantilla v. Nc Mall Assocs.</u>, 167 N.J. 262, 272 (2001) (citing <u>Cozzi v. Owens Corning Fiber Glass Corp.</u>, 63 N.J. Super. 117, 120 (App. Div. 1960)).  Where, however, the indemnity provision's meaning is ambiguous, the Court must strictly construe the clause against the indemnitee.  <u>Mantilla</u>, 167 N.J. at 272 (quoting <u>Ramos v. Browning Ferris Ind. of S. Jersey, Inc.</u>, 103 N.J. 177, 191 (1986)).

Neither party disputes the existence of a valid lease agreement between Tropicana and Providence.  The lease, which was first entered into between the lessor Adamar and the lessee Providence, was assigned and assumed, with all its rights and liabilities, by Tropicana in 2009. (See Ex. C to Def.'s Br., Bankruptcy Court Order Art. III, § 3.2(b); Ex. D to Def.'s Br., Bill of Sale, Assignment and Assumption Agreement.)  Nor do the parties dispute the existence of an indemnification clause in the lease agreement.  (See Ex. B to Def.'s Br., Lease Agreement Art. 10, § 10.1.)  In fact, the parties do not even appear to dispute the circumstances under which the indemnification agreement applies.  While Providence argues there is ambiguity as to whether the indemnification provision applies in the case of Tropicana's negligence, Tropicana does not dispute the issue and the Court finds that the relevant indemnification terms in the lease are clear.

According to the actual language of the lease agreement, the Tenant, Providence,

> will defend and will indemnify [Landlord, Tropicana] … against any and all claims, actions, damages, liability and expense (including, but not limited to, reasonable attorneys' fees and disbursements) connected with … personal injury … arising from, related to, or in connection with the performance of [Providence's] Work, the occupancy of the Premises or occasioned wholly or in party by act or omission of [Providence], its contractors, subcontractors, subtenants, licensees or concessionaires, or its or their respective agents, servants or employees on any part of [Tropicana's] property or The Quarter or by reason of [Providence's] breach of any of the provisions of this lease.  <u>[Providence] shall not, however, be liable for damages or injury occasioned by the negligence or willful misconduct of [Tropicana] or its agents, employees, contractors or</u>

servants, unless such damage or injury arises from perils against which [Providence] is required by this lease to insure. …

[Tropicana] will defend and indemnify [Providence] and save [Providence] harmless from and against any and all claims, actions, damages, liability and expense (including but not limited to, attorney's fees and disbursements) in connection with … personal injury … arising from, related to, or in connection with [Tropicana's] willful misconduct or negligent acts or omissions in the Common Areas of the Quarter. [Tropicana] shall not be liable for damages or injury occasioned by the negligence or willful misconduct of [Providence], its agents, employees, contractors or servants.

(Id.) (emphasis added).  This language is unambiguous, and cannot be construed to indemnify Tropicana against losses resulting from its own negligence or willful misconduct.  See Ramos, 103 N.J. at 191.  The indemnification section contains two provisions that speak directly to the issue of damages arising from Tropicana's negligence.  In one case, the clause saves Providence from being required to indemnify Tropicana in the case of Tropicana's negligence.  In the other clause, the agreement requires Tropicana to indemnify Providence where damages arise from the negligence of Tropicana in The Quarter.

Based on the foregoing, the Court finds that Tropicana and Providence have a valid contract.  Within this contract is an effective indemnification provision.  According to the terms of the indemnification provision, where alleged damages were not occasioned by the negligence of Tropicana, its agents, or its employees, Tropicana is entitled to defense and indemnification by Providence against all claims in connection with the acts or omissions of Providence, its agents, or its servants.  Before the Court may declare Tropicana's rights under the indemnification provision, however, it must assess whether Tropicana is itself negligent.

## C.      Tropicana's Alleged Misconduct[5]

Providence argues that Tropicana is not entitled to summary judgment on its crossclaim for indemnification because there remains a question of fact as to whether Tropicana was itself negligent, through the acts or omissions of its employees or agents, for failing to prevent the alleged incident between Plaintiff and Jones.

As an initial matter, the essential elements for a negligence claim are: (1) a duty of care, (2) a breach of that duty, (3) actual and proximate causation, and (4) damages.  Jersey Cent. Power & Light Co. v. Melcar Util. Co., 212 N.J. 576, 594 (2013).  Whether a duty exists and the scope of that duty are questions of law.  See Clohesy v. Food Circus Supermarkets, Inc., 149 N.J. 496, 502 (1997).  Whether a duty has been breached is a question of fact to be decided by a jury. Arvanitis v. Hios, 307 N.J. Super. 577, 582 (App. Div. 1998).  The Court may grant summary judgment on the issue of whether a duty has been breached if it is "satisfied a rational fact finder could not conclude defendant breached [its] duty of care."  Endre v. Arnold, 300 N.J. Super. 136, 143 (App. Div. 1997), certif. denied, 150 N.J. 27 (1997).

First with respect to the element of duty, in New Jersey, "business owners and landlords have a duty to protect patrons and tenants from foreseeable criminal acts of third parties

---

[5] The Court is also required to apply New Jersey choice of law rules Providence's negligence claim. See supra at note 4.  With respect to choice of law for tort claims, the Court notes that New Jersey courts apply the "most significant relationship test."  P.V. ex rel. T.V. v. Camp Jaycee, 197 N.J. 132, 136 (2008).  This begins with the presumption that New Jersey law applies, because the alleged negligence or other misconduct occurred in New Jersey.  See id.

The Court further finds that, based on the overwhelming degree of New Jersey contacts, the considerations found in Sections 6 (inter alia, the needs of the interstate systems, the relevant policies of the forum, the relevant policies of other interested states, the protection of justified expectations, the basic policies underlying the particular field of law, certainty, predictability and uniformity of result, and ease in the determination and application of the law to be applied) and 145 (inter alia, the place where the injury occurred, the place where the conduct causing the injury occurred, the domicile, residence, nationality, place of incorporation and place of business of the parties, and the place where the relationship, if any, between the parties is centered) of the Second Restatement of Conflict of Laws, and the fact that no other state has a more significant relationship to the parties or issues, the presumption of applying New Jersey law has not been overcome, and accordingly New Jersey law shall apply to all tort claims.  See id.

occurring on their premises."  Clohesy v. Food Circus Supermarkets, Inc., 149 N.J. 496, 504

(1997).  Similarly, a landlord "has a responsibility to take reasonable steps to curtail the

dangerous activities of tenants of which he should be aware and that pose a hazard to the life and

property of other tenants."  Scully v. Fitzgerald, 179 N.J. 114, 122 (2004) (citing Williams v.

Gorman, 214 N.J. Super. 517, 523 (App. Div. 1986)).  New Jersey courts rely on the Restatement

(Second) of Torts Section 344 to determine the duty of care owed to business invitees.  See

Clohesy, 149 N.J. at 506-07.  Section 344 states:

> A possessor of land who holds it open to the public for entry for
> his business purposes is subject to liability to members of the
> public while they are upon the land for such a purpose for physical
> harm caused by the accidental, negligent, or intentionally harmful
> acts of third persons or animals, and by the failure of the possessor
> to exercise reasonable care to
>
> (a) discover that such acts are being done or are likely to be done,
> or
>
> (b) give a warning adequate to enable the visitors to avoid the
> harm, or otherwise to protect them against it.

Additionally, Comment (f) to Section 344 states:

> Duty to police premises. Since the possessor is not an insurer of
> the visitor's safety, he is ordinarily under no duty to exercise any
> care until he knows or has reason to know that the acts of the third
> person are occurring, or are about to occur. He may, however,
> know or have reason to know, from past experience, that there is a
> likelihood of conduct on the part of third persons in general which
> is likely to endanger the safety of the visitor, even though he has
> no reason to expect it on the part of any particular individual. If the
> place or character of his business, or his past experience, is such
> that he should reasonably anticipate careless or criminal conduct
> on the part of third persons, either generally or at some particular
> time, he may be under a duty to take precautions against it, and to
> provide a reasonably sufficient number of servants to afford a
> reasonable protection.

The focus of whether business owners and landlords owe a duty of care to business invitees to protect against criminal acts of third parties is primarily on foreseeability.  See Clohesy, 149 N.J. at 505.  Where harm is foreseeable and the landlord has sufficient control to prevent it, the landlord's duty arises.  Braitman v. Overlook Terrace Corp., 68 N.J. 368, 382-83 (1975).  New Jersey courts apply a "totality of the circumstances" test when considering the issue of foreseeability, "all the factors a reasonably prudent person would consider."  Clohesy, 149 N.J. at 508.  In some cases landlords may have actual notice of prior similar criminal incidents on the premises, in others they may have constructive notice.  Id.  "The requirement of actual or constructive knowledge is merely a means of applying the general rule ... that the proprietor may be liable if he knew or by the exercise of reasonable care could have discovered the dangerous condition, and it does not alter the basic duty to use ordinary care under all the circumstances."  Id. (quoting Bridgman v. Safeway Stores, Inc., 2 Cal. Rptr. 146, 148 (1960)).

According to Providence, Tropicana may have had security staff patrolling The Quarter, including the area of the incident.  Providence also points to two security cameras at the entrance and exit of Providence, operated by Tropicana personnel, which might have captured the incident and alerted Tropicana security personnel.  Finally, Providence also suggests that the incident took place in an area of the Quarter that it did not own, operate or control.  The gist of Providence's argument is that Tropicana could have monitored the area in The Quarter where the incident took places using its security cameras and could have stopped the alleged assault from taking place by utilizing one of its own security staff.  Based on these allegations, Providence contends that there is a question of fact as to whether Tropicana was negligent, but says nothing of the existence or scope of Tropicana's duty to Plaintiff.

Tropicana only tangentially addresses the issue of its duty.  It puts forth a multitude of facts bearing on its lack of control over Jones during the period of his special employment detail. The Court accepts that Jones was assigned to Providence on the morning of the incident, and that Tropicana was not in a position to exercise control over Jones at that time.  Providence seemingly does not contest this either, as its argument is predicated on Tropicana's ability to prevent the alleged attack on Plaintiff through means of its own surveillance and security.  Yet, this fact relates primarily to Jones' relationship with Tropicana, not its duty to protect business invitees from criminal acts of third parties.  See Butler v. Acme Markets, Inc., 89 N.J. 270, 276 (1982) ("If the reasonably prudent person would foresee danger resulting from another's voluntary criminal acts, the fact that another's actions are beyond defendant's control does not preclude liability.") (citing Trentacost v. Brussel, 82 N.J. 214, 222 (1980)).  While Jones's relationship to Tropicana and Providence may be relevant, it is not the most significant factor bearing on the existence of Tropicana's duty.

Based on the facts presented by the parties, the Court concludes that Tropicana did not have a duty of care to protect Plaintiff from the alleged actions of Jones while he was in The Quarter.  Neither party disputes that the alleged acts of Jones took place in The Quarter, outside of Providence's business.  Tropicana has already established that it is the landlord and possessor of The Quarter, a common area within the premises of its casino.  (See also Ex. B to Def.'s Br., Lease Agreement Art. 7, § 7.1 (granting Tropicana exclusive control of all common areas, including The Quarter).)  Because Tropicana controlled the premises, if it knew of a foreseeable risk of harm to Plaintiff, it had a duty to take reasonable steps to prevent that danger.  See Gonzalez v. Safe and Sound Security Corp., 185 N.J. 100, 121-22 (2005).

14

However, after examining the totality of the circumstances, the Court does not find that there was a foreseeable risk of harm to Plaintiff of which Tropicana should have been aware. First, there is no evidence that Tropicana had actual or constructive notice of the potential harm. While Providence alleges that Plaintiff had security guards roaming the area and security cameras pointed at the scene, the deposition testimony it relies on in support of its argument is unclear as to whether this was the situation during the morning of the incident.  (See Ex. A to Def.'s Opp'n, Bannon Dep. at 30-33 (commenting that the security department was responsible for areas of Providence that were non-casino, e.g., The Quarter, there were cameras in those areas which the security department had access to, and certain members of the security department wear uniforms and "go out on the floor"); id. at 38:5-7 (noting that tenants within Tropicana hire their own detail officers and Tropicana hires its own detail officers to roam The Quarter); id. at 57:13-23 (noting that Tropicana has cameras at each end of The Quarter); id. at 58:19-59:25 (stating that it was Tropicana's intention to record video images from the cameras, which were first sent to the security office, but noting that malfunctioning equipment or changing views from the cameras may have prevented the cameras from witnessing or recording certain events).)  Providence's evidence is insufficient to suggest that Tropicana had actual notice.  Nor does Providence point to any evidence indicating that Tropicana was aware of prior incidences of alleged misconduct or criminal activities on behalf of security staff, detail officers hired by Tropicana, or detail officers hired by tenants such as Providence.  (But see Ex. A to Def.'s Opp'n, Bannon Dep. at 49:9-19 (stating that, as a Tropicana security staff member, he was aware of patrons assaulting other patrons, patrons assaulting ACPD officers, patrons assaulting Tropicana security staff and patrons fleeing the scenes of incidents).)  Instead, it appears that both Tropicana and its tenants would hire their own detail officers with some regularity to patrol

15

the premises.  There is no contention that these officers were hired, or should have been utilized, to monitor one another.  In fact, a reasonable person would conclude that security officers and detailed police officers are likely to <u>reduce</u> the overall risk of harms, rather than create new hazards.  There is no disputed fact, based on evidence in the record, to contradict this conclusion. Taken as a whole, a reasonably prudent person would not foresee the danger of Jones' alleged voluntary criminal acts.  <u>Butler</u>, 89 N.J. at 276.

Providence has not put forth evidence showing a dispute with respect to any fact on which this Court's determination of Tropicana's duty relies.  Because the Court finds that Tropicana had no duty to protect Plaintiff from the alleged actions of Jones, it also finds that Tropicana was not negligent in the instant case.  As a result, the Court holds that the indemnification provision of Tropicana's lease with Providence is applicable and Tropicana is entitled to defense and indemnification by Providence against all claims in connection with the acts or omissions of Providence or its agents or servants.  Accordingly, the Court will grant Tropicana's motion for partial summary judgment as to its declaratory judgment crossclaim against Providence.

IV.     **CONCLUSION**

For the reasons expressed above, Defendant Tropicana's motion for partial summary judgment for declaratory judgment on its crossclaim against Providence will be **GRANTED**. Providence will be ordered to indemnify Tropicana and save it harmless from and against any and all claims, actions, damages, liability and expense, including, but not limited to, reasonable attorneys' fees and disbursements.  An appropriate Order shall enter.

Dated: 10/6/2014                                                        s/ Robert B. Kugler
                                                                              ROBERT B. KUGLER
                                                                              United States District Judge

17