NOT FOR PUBLICATION (Doc. Nos. 160,163)

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY
CAMDEN VICINAGE

|  |  |
|---|---|
| JAMIE DEE WORSTER SIMS and ASHLEE SIMS, | Civil No. 13-1981 (RBK/JS) |
| Plaintiffs, | **OPINION** |
| v. |  |
| TROPICANA ENTERTAINMENT, INC., et al., |  |
| Defendants. |  |

**KUGLER**, United States District Judge:

Jamie Worster-Sims and Ashlee Sims ("Plaintiffs") bring federal and state claims against the City of Atlantic City ("the City") and Officer Michael Jones ("Jones"). Plaintiffs also bring state law claims against Tropicana Entertainment, Inc., Tropicana Entertainment Holdings, LLC, Tropicana Entertainment Intermediate Holdings, LLC, Tropicana Entertainment, LLC, Tropicana Atlantic City Corporation, Tropicana AC Sub Corporation ("the Tropicana Defendants"), Providence AC, Inc., and Metronome Hospitality Group. Plaintiffs also bring state law claims against fictitious defendants John Does I-X and ABC Corp. I-X. This matter comes before the Court on the Motions for Summary Judgment of Defendants City of Atlantic City & Atlantic City Policy Department ("the City") (Doc. No. 160) and Michael Jones ("Jones") (Doc. No. 163). For the following reasons, Defendants' motions are **GRANTED IN PART** and otherwise **DENIED.**

1

I.   **FACTUAL BACKGROUND**

The facts, in the light most favorable to the Plaintiffs, are as follows: On April 30, 2011, Jamie Worster-Sims ("Plaintiff") went to Atlantic City to celebrate his cousin's bachelor party. Def. Mot., Ex. B. at 68:23-69:3 (Doc. No. 160-7). Plaintiff arrived in Atlantic City between 10:30 PM and 11:00 PM and met a group of friends and family at a restaurant. *Id.* at 70:12-18; 70:7-16. The group included Plaintiff's cousin, Beau Cantera ("Cantera"). *Id.* at 72:18-20; 77:2-5.

Members of the group continued the celebration at Club Providence. *Id.* at 78:16-20. Club Providence is a nightclub in The Quarter, which is an area within the Tropicana Casino and Hotel. *Id.* at 77:6-9; 78:16-20. The group was seated in the VIP section of the Club. *Id.* at 84:3-7. Plaintiff mixed himself more than one, but fewer than five vodka and tonics over the course of the evening. *Id.* at 82:20-25. After some time, Plaintiff and Cantera left their group's table in the VIP area to use the restroom. *Id.* at 88:23-25; 89:1-2. Plaintiff cannot recall how long he and Cantera were away from their table, but their group was gone from the VIP area when they returned. *Id.* at 89:3-4; Def. Mot., Ex. C at 57:17-22 (Doc. No. 160-8).

After their return from the restroom, Plaintiff and Cantera were asked to leave by security personnel. Def. Mot., Ex. C at 62:17-20. Cantera then went to retrieve his jacket, which he had left in the VIP section. *Id.* Cantera was then picked up by several large men and carried from the Club. *Id.* at 58:11-22. Plaintiff was also picked up and carried out of the club by at least one person. Def. Mot., Ex. B at 102:18-25, Ex.C. at 61:2-7. Plaintiff's shoe fell off while he was carried from the Club. Def. Mot., Ex. B at 110:10-16. When Plaintiff bent to retrieve his shoe, a security guard kicked the shoe back toward the Club. *Id.* at 110:20-22, 111:17-20; 112:4-12. Cantera then attempted to retrieve the shoe for Plaintiff. Def. Mot., Ex. C at 69:15-20.

Officer Michael Jones was working a detail at Club Providence on April 30, 2011 into May 1, 2011. Def. Mot., Ex. D at 6 (Doc. No. 160-9). Jones approached Plaintiff and Cantera after they were escorted from the Club. Def. Mot., Ex. C at 69:22-24. Cantera poked Jones in the chest with his index finger and called him an expletive. *Id.* at 69:22-24.

The parties vehemently disagree over what happened next. Jones alleges that he then pushed Cantera away because Cantera was standing very close. Def. Mot., Ex. D at 6. Jones claims that Plaintiff then "mushed" him in the face by placing his hand on Jones's face and pushing his head back. *Id.* It is undisputed that Officer Jones struck Plaintiff once in the face with his closed fist. *Id.* Jones's strike caused Plaintiff to fall to the ground. *Id.* Jones contends that Cantera then ran at him in a threatening manner, causing Jones to strike Cantera once in the face with a closed fist. *Id.* Plaintiff and Cantera were both arrested. Def. Mot., Ex. E (Doc. No. 160-10).

Plaintiff and Cantera, have a different recollection of events. Cantera claims that he turned to walk away after poking Jones in the chest. Def. Mot., Ex. C at 73:23-25. Cantera saw Jones strike Plaintiff in the face. *Id.* at 78:13-17. Cantera and Plaintiff both deny that Plaintiff ever touched Jones. *Id.* at 129:3-5; Pl.'s Opp'n Mot., Ex. A at 99:6-11 (Doc. No. 165-1). Cantera claims that he then ran at Jones, but came to his senses and stopped short of making contact. Def. Mot., Ex. C at 82:23-83:6. Cantera recounts that Jones then knocked him unconscious with a single strike to the face. *Id.* at 84:14-22.

An ambulance was called to the Tropicana after Plaintiff and Cantera's arrests. Def. Mot., Ex. G.[1] A form prepared by the EMTs indicates that Plaintiff refused further medical assistance and transport after being informed of the risk of not getting checked at the hospital. *Id.* at 2. The

---

[1] Exhibit G has no associated Document Number because he City's counsel did not attach Exhibit G to their motion. The Court thanks Defendant Jones's counsel for promptly providing a copy to chambers.

3

form also indicates that Plaintiff was oriented to person, place, time, and situation. *Id.* at 3. The Plaintiff admits that the ambulance report states his refusal of transport. Pl.'s Opp'n Mot. ¶ 34. However, Plaintiff contends that he was in no condition to refuse medical treatment after his alleged injury. *Id.*; Pl.'s Opp'n Mot., Ex. B at 2 (Doc. No. 165-2).

## II.     STANDARD

The court should grant a motion for summary judgment when the moving party "shows that there is no genuine dispute as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). An issue is "material" to the dispute if it could alter the outcome, and a dispute of a material fact is "genuine" if "a reasonable jury could return a verdict for the non-moving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986). In deciding whether there is any genuine issue for trial, the court is not to weigh evidence or decide issues of fact. *Id.* at 248. Because fact and credibility determinations are for the jury, the non-moving party's evidence is to be believed and ambiguities construed in her favor. *Id.* at 255.

Although the movant bears the burden of demonstrating that there is no genuine issue of material fact, the non-movant likewise must present more than mere allegations or denials to successfully oppose summary judgment. *Anderson*, 477 U.S. at 256. The nonmoving party must at least present probative evidence from which jury might return a verdict in his favor. *Id.* at 257. Furthermore, the nonmoving may not simply allege facts, but instead must "identify those facts of record which would contradict the facts identified by the movant." *Port Auth. of New York and New Jersey v. Affiliated FM Ins. Co.*, 311 F.3d 226, 233 (3d Cir. 2002). The movant is entitled to summary judgment where the non-moving party fails to "make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

### III.    DISCUSSION

#### A. Claims Against the City of Atlantic City and the Atlantic City Police Department

As noted above, Worster-Sims brings claims against the City of Atlantic City and the Atlantic City Police Department for assault and battery, negligence, negligent infliction of emotional distress, intentional infliction of emotional distress, a section 1983 claim for municipal liability, and a claim for deliberate indifference to medical needs. Plaintiff Ashlee Sims brings a derivative per quod claim.

The Court notes that courts within the Third Circuit treat municipalities and their police departments as a single entity for section 1983 claims. *See Bonenberger v. Plymouth Twp.*, 132 F.3d 20, 25 n.4 (3d Cir. 1997); *Colburn v. Upper Darby Twp.*, 838 F.2d 663, 671 n.7 (3d Cir. 1988), *overruled in part on other grounds by Leatherman v. Tarrant Cty. Narcotics Intelligence & Coordination Unit*, 507 U.S. 163, 168 (1993). It follows that the City of Atlantic City is the appropriate defendant. Defendant Atlantic City Police Department is dismissed from this action. Fed. R. Civ. P. 21 ("On motion or on its own, the court may at any time, on just terms, add or drop a party."

*Count I: Assault and Battery*

Plaintiff does not clearly state the basis for his assault and battery claim against the City of Atlantic City. The City argues that it is only responsible for its own illegal acts under Section 1983. The New Jersey Tort Claims Act ("NJTCA") provides that "[a] public entity is liable for injury proximately caused by an act or omission of a public employee within the scope of his employment in the same manner and to the same extent as a private individual under like circumstances." N.J. Stat. Ann. § 59:2-2. However, an exception exists for public entities where the act or omission of the employee constitutes "a crime, actual fraud, actual malice, or willful

5

misconduct." N.J. Stat. Ann. § 59:2-10. Assault and battery are torts that require a showing of intentional or willful misconduct. Therefore, the City is immune from liability for the assault and battery claims. *See Merman v. City of Camden*, 824 F. Supp 2d 581, 597 (D.N.J. 2010) (dismissing plaintiff's claims that the city was vicariously liable for the alleged assault and battery by city police officers based on NJTCA immunity). Defendant's motion for summary judgment with respect to Count I is granted.

### *Count III: Negligence*

Plaintiff alleges that the City was negligent in "failing to properly screen, hire, employ and/or retain employees and/or agents, including Defendant, Michael Jones, with sufficient skill in the provision of police and/or security services." Compl. ¶ 54. The City contends that Count III is an attempt to impose liability on the City based on the "alleged tortuous [sic] acts of another," namely Jones. The City fails to realize that Plaintiff states a cause of action under New Jersey law for the tort of negligent hiring, supervision, and retention. *See Hottenstein v. City of Sea Isle City*, 977 F. Supp. 2d 353, 369 (D.N.J. 2013) (laying out the elements for this tort). New Jersey law allows plaintiffs to assert claims against municipalities for negligent supervision of their employees. *Clemons v. City of Trenton*, No. 10-cv-4577, 2011 WL 194606, at *1 (D.N.J. Jan. 20, 2011) (citing *Hoag v. Brown*, 935 A.2d 1218 (N.J. Super. Ct. App. Div. 2007)). Furthermore, "a claim based on negligent hiring or negligent supervision is separate from a claim based on respondeat superior." *Hoag*, 935 A.2d at 1230. The Court finds that Plaintiff has provided enough evidence to withstand Defendant's motion for summary judgment on Plaintiff's theory that the Internal Affairs Department and its allegedly deficient Early Warning System provided inadequate supervision of Jones. Defendant's motion for summary judgment with respect to Count III is denied.

*Count IV: Negligent Infliction of Emotional Distress*

Plaintiff next alleges negligent infliction of emotional distress ("NIED") against the City. When a physically injured tort victim experiences emotional distress in addition to physical injuries, she need not bring a separate claim for NIED. *See Mauro v. Raymark Indus., Inc.*, 116 N.J. 126, 137 (1989) (holding that a plaintiff who sustained a physical injury can recover for emotional distress without bringing a separate NIED claim). Under New Jersey law, both recognized theories of NIED contemplate the absence of direct physical injury. *Jablonowska v. Suther*, 195 N.J. 91, 104 (2008) (indicating that the two recognized forms of NIED under New Jersey law are the "zone of danger" theory where the plaintiff is located within a zone of risk created by the defendant's negligent conduct, and the theory allowing recovery for witnessing the death or serious injury of a close family member). Plaintiff has not produced evidence that would allow him to recover under either recognized NIED theory. Accordingly, Defendant's motion for summary judgment with respect to Count IV is granted.

*Count V: Intentional Infliction of Emotional Distress*

Plaintiff alleges a state law claim for intentional infliction of emotional distress ("IIED") against the City. The City argues that it is only liable for its own illegal acts under section 1983. Plaintiff does not contest the City's argument. As discussed above, the City could be liable for torts committed by its employees in the course of their duties under the NJTCA. The key caveat for this count is the exception for municipalities where the act or omission of the employee constitutes "a crime, actual fraud, actual malice, or willful misconduct." N.J. Stat. Ann. § 59:2-10. Courts have consistently held that public entities cannot be held liable for IIED. *See Warnett v. Corr. Med. Servs.*, No. 07-cv-1291, 2008 WL 930739 (D.N.J. Mar. 31, 2008), at *7 (citing *Kee v. Camden Cty.*, 04-cv-842, 2006 WL 2827733 (D.N.J. Sept. 28, 2006) (citing *Soto v. City of

7

*Newark*, 72 F. Supp 489, 497 (D.N.J. 1999))). Defendant's motion for summary judgment with respect to Count V is granted.

### *Count VII: § 1983 Civil Rights*

Plaintiff in Count VII alleges a civil rights claim against the City based on a failure to "properly train, monitor, discipline, and supervise police officers." Compl. at ¶ 81. It is axiomatic that a plaintiff may not hold a municipal entity liable under 42 U.S.C. § 1983 on a theory of respondeat superior. *See Monell v. Dep't of Soc. Servs. of City of New York*, 436 U.S. 658, 691 (1978). Rather, to establish a section 1983 municipal liability claim that will survive a motion for summary judgment, a plaintiff must offer evidence of a particular municipal policy or custom, "whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy," that contributed to Plaintiff's injury. *See id.* at 694.

After identifying a policy or custom, a plaintiff then must establish causation by showing how the municipality's deliberate conduct under that custom was the "moving force" behind the injury alleged. *See Bd. of Cty. Comm'rs v. Brown*, 520 U.S. 397, 404 (1997). Where the policy "concerns a failure to train or supervise municipal employees," this burden involves demonstrating "that the failure amounts to deliberate indifference to the rights of persons with whom those employees will come into contact." *Thomas v. Cumberland Cty.*, 749 F.3d 217, 222 (3d Cir. 2014) (internal quotation marks and citation omitted). "[T]he deficiency in training [must have] actually caused the constitutional violation." *Id.* (quoting *City of Canton v. Harris*, 489 U.S. 378, 391 (1989)).

While the Supreme Court originally fashioned the "deliberate indifference" doctrine in the context of a city's alleged failure to properly train its police officers, the Third Circuit has since adopted this standard in other policy and custom situations. *Beck v. City of Pittsburgh*, 89

F.3d 966, 972 (3d Cir. 1996). In general, a municipality may be liable under section 1983 if it tolerates known illegal conduct by its employees. *Id.* In such circumstances, it can be said to have a custom that evidences deliberate indifference to the rights of its inhabitants if (1) policymakers were aware that municipal employees had deprived others of certain constitutional rights; (2) it failed to take precautions against future violations; and (3) this failure led, at least in part, to the plaintiff's suffering the same deprivation of rights. *See id.* (citing *Bielevicz v. Dubinon*, 915 F.2d 845, 851 (3d Cir. 1990)).

Plaintiff most clearly articulates three routes for municipal liability: (1) Negligent Hiring/Screening; (2) Failure to Train; and (3) Failure to Supervise, Investigate, and Discipline. The Court addresses each of these routes in turn.

### *i. Negligent Hiring/Screening*

In order to establish municipal liability for inadequate screening in hiring practices, a plaintiff must demonstrate that the municipal decision to hire reflected deliberate indifference to the possibility that a violation of a particular constitutional or statutory right would follow the decision. *See Bd. of Cty. Comm'rs*, 520 U.S. at 411 (1997). The Supreme Court stated that "[o]nly where adequate scrutiny of an applicant's background would lead a reasonable policymaker to conclude that the plainly obvious consequence of the decision to hire the applicant would be the deprivation of a third party's federally protected right can the official's failure to adequately scrutinize the applicant's background constitute 'deliberate indifference.'" *Id.*

Plaintiff's sole argument in his moving papers opposing summary judgment on this point appears to be the contention that Jones is now incarcerated.[2] The City cites to Jones's statement that he underwent an extensive background check before he was hired. Def. Mot., Ex. H at 221:15-17. There is nothing in the record that suggests the City could have reasonably concluded that hiring Jones would lead to the violation of third party rights. Accordingly, Defendant's motion for summary judgment is granted with respect to Plaintiff's *Monell* claim premised on the City's negligent hiring/screen of Jones.

      *ii. Failure to Train*

Plaintiff's complaint alleges a failure by the City to properly train and supervise employees on the exercise of reasonable force against citizens. Compl. ¶ 82. Plaintiff's moving papers opposing summary judgment reference Jones's failure to attend a required "in-service" training on March 25, 2008 and his subsequent punishment for not attending. Pl.'s Opp'n Mot. at 5.

In resolving the issue of a city's liability for failure to train, as Plaintiff alleges here, "the focus must be on adequacy of the training program in relation to the tasks the particular officers must perform." *City of Canton v. Harris*, 489 U.S. 378, 390 (1989). The identified deficiency in a city's training program must also be closely related to the plaintiff's constitutional injury because "[i]n virtually every instance where a person has had his or her constitutional rights violated by a city employee, a § 1983 plaintiff will be able to point to something the city 'could have done' to prevent the unfortunate incident." *Id.* at 392 (citation omitted). Thus, Plaintiff's

---

[2] This argument, at most, is made via insinuation in Plaintiff's Response to Atlantic City's Statement of Facts ¶ 36. The Court would like to remind the parties that Local Civil Rule 56.1(a) states, "[e]ach statement of material facts shall be a separate document (not part of a brief) and shall not contain legal argument or conclusions of law."

claim yields liability against the City only where Plaintiff can show that the City's failure to train constituted deliberate indifference to the constitutional rights of its inhabitants.

Plaintiff has not adequately demonstrated that the training Jones received was so deficient as to reflect the City's deliberate indifference to Plaintiff's constitutional rights. Plaintiff points to nothing in the record other than Jones's failure to attend one in-service training in 2008 to demonstrate deficient training. The Court finds that no reasonable jury could find deliberate indifference to adequate training by the City from one missed training for which Jones was punished. Therefore, Defendant's motion for summary judgment is granted with respect to Plaintiff's *Monell* claim premised on the City's failure to train Jones.

### iii. Failure to Supervise, Investigate, and Discipline

Plaintiff, in his moving papers opposing summary judgment, argues that Defendant tolerated and tacitly authorized a clear pattern of misconduct by Jones. Specifically, Plaintiff relies on evidence suggesting that the alleged failure of Defendant to sustain excessive force and other complaints filed against Jones created a custom tolerating and tacitly authorize misconduct by Jones and that this custom was the moving force behind his physical injuries.

It is well recognized that municipalities may be liable under section 1983 on this basis. *See, e.g.*, *Hammock v. Borough of Upper Darby*, No. 06-1006, 2007 WL 3232115 at *8 (E.D. Pa. Oct. 31, 2007) (describing the inquiry as "whether [the defendant's] internal investigatory and disciplinary procedures constituted a municipal policy of deliberate indifference toward the risks of police misconduct, and whether adherence to that policy proximately caused [the plaintiff's] constitutional injuries."). Whether this custom in fact existed and had such an effect in the present case, Plaintiff maintains, is an issue of disputed fact that precludes the entry of summary judgment at this time. The Court now turns to the merits of this argument.

In *Beck v. City of Pittsburgh*, the Third Circuit recognized that a section 1983 claim for damages against a municipality could survive summary disposition where the plaintiff offered evidence suggesting that the municipality's chief law enforcement policymaker knew about and acquiesced in a custom that tolerated the use of excessive force by city police officers. 89 F.3d 966 (3d Cir. 1996). Specifically, the plaintiff offered into evidence a series of detailed excessive force complaints against the defendant police officer who had allegedly injured plaintiff.[3] The Court found the introduction of these records sufficient "for a reasonable jury to infer that the Chief of Police of Pittsburgh . . . knew, or should have known, of [the defendant officer's] violent behavior in arresting citizens." *Id.* at 973. That is, because the officer had allegedly used excessive force on numerous occasions in the past before allegedly using such force against the plaintiff in *Beck*, there arose disputed issues of fact whether an informal policy of acquiescence existed and whether it had caused the plaintiff's alleged injuries. Accordingly, the Third Circuit panel reversed the trial court's grant of judgment as a matter of law in favor of the defendant municipality. *Id.* at 976.

While the *Beck* court noted that a number of considerations led it to reverse the trial court's judgment,[4] the court distinguished contrary authority principally on the basis of the admission of numerous written civilian complaints filed against the officer who had allegedly injured the plaintiff. *Id.* at 975 (distinguishing *Bryant v. Whalen*, 759 F. Supp. 410 (N.D. Ill.

---

[3] The trial court in that case bifurcated the plaintiff's cases against the police officer and the city, so the police officer was not actually a party to the case that the Third Circuit heard on appeal. *Beck*, 89 F.3d at 967.

[4] Specifically, the Court found that the city's procedures for investigating complaints of excessive force by officers were "structured to curtail disciplinary action and stifle investigations into the credibility of the City's police officers." *Id.* at 974. This was because police officers' statements appeared to have been given special, favorable consideration. *Id.* In addition, there was no formalized tracking of complaints made against individual officers. Further, there was an internal report acknowledging that the department had a problem with police use of excessive force. *Id.* at 975. Finally, there was statistical evidence offered about the number of excessive force complaints lodged against the city each year and the rate at which they were sustained by the investigating agency. *Id.* at 970.

1991)). That is, the multiplicity of excessive force complaints surrounding a single officer suggested to the court that those occurrences were not isolated incidents, but rather constituted a pattern of dangerous behavior requiring real intervention on the part of the city. *See id.* at 975.

Since the *Beck* decision, trial courts in this circuit have grappled with the issue of what type of evidence a plaintiff must adduce in support of a *Monell* municipal liability claim under section 1983 in order to survive summary judgment. For instance, statistical evidence alone, "isolated and without further context," generally "may not justify a finding that a municipal policy or custom authorizes or condones the unconstitutional acts of police officers." *Merman v. City of Camden*, 824 F. Supp. 2d 581, 591 (D.N.J. 2010) (citing *Strauss v. City of Chicago*, 760 F.2d 765, 768-69 (7th Cir. 1985)). Instead, if a plaintiff wishes to rely principally on statistics showing the frequency of excessive force complaints and the rate at which those complaints are sustained, she must show why those prior incidents were wrongly decided and "how the misconduct in those cases is similar to that involved in the present action. *See Franks v. Cape May Cty.*, No. 07-6005, 2010 WL 3614193 at *12 (D.N.J. Sept. 8, 2010). One way to do this would be to show, as was done in the *Beck* case, that the officer whom a plaintiff accuses of using excessive force has been the subject of multiple similar complaints in the past. *See Beck*, 89 F.3d at 975; *see also Garcia v. City of Newark*, No. 08-1725, 2011 WL 689616 at **3-5 (D.N.J. Feb. 16, 2011) (denying defendant municipality's motion for summary judgment on plaintiff's section 1983 claim when plaintiff presented evidence that the six individual defendants together accounted for more than 55 complaints for excessive force and false arrest in the 11 years prior to the incidents at issue in that case).

In this case, when viewing the facts in the light most favorable to Plaintiff, the Court concludes that Plaintiff has met his burden and demonstrated a genuine issue of material fact.

Plaintiff introduced Jones's disciplinary record, which reflects that Jones was subject to six internal affairs complaints in the three years prior to Plaintiff's arrest. Pl.'s Opp'n Mot., Ex. D at 36 (Doc. No. 165-2). Jones's index card reveals that Jones had six internal affairs complaints filed against him between April 2008 and April 2011—not including Plaintiff's—including two for excessive force. *Id.*

The Court recognizes that in many cases in which courts have denied summary judgment, plaintiffs have offered stronger evidence of consistently filed complaints than is offered here. *See Beck*, 89 F.3d at 983 (denying summary judgment where plaintiff introduced that the officer had five prior complaints filed against him in five years, all of which alleged similar misconduct); *Garcia*, 2011 WL 689616 at *3–5 (D.N.J. Feb. 16, 2011) (denying defendant municipality's motion for summary judgment on plaintiff's § 1983 claim when plaintiff presented evidence that the six individual defendants together accounted for more than 55 complaints for excessive force and false arrest in the 11 years prior to the incidents at issue); *Merman*, 824 F. Supp. at 593 (allowing the case proceed when plaintiff introduced, among other things, evidence that the Camden Police Department received ten civilian complaints alleging police brutality stemming from events surrounding Plaintiff's arrest). However, the Court does not find the number of complaints filed against Jones to be dispositive. Here, the allegations contained in the complaints and a factual dispute regarding the thoroughness of the related investigations further influence the Court's decision.

One complaint filed against Jones by Mr. Khan resulted from an allegedly violent interaction after Mr. Khan was escorted out of Club Providence. *See* Def. Mot., Ex. K at 79-86. (Doc. No. 160-15). The evidence on which Plaintiff relies questions the adequacy of the Internal Affairs investigation into Mr. Khan's complaint and for other investigations of Jones in the years

14

leading up to Plaintiff's arrest. "Were a jury to credit [P]laintiff's proofs that the City inadequately investigated its officers' alleged use of excessive force and other constitutional violations and failed to properly supervise and discipline its officers, a reasonable fact-finder could, in turn, conclude that the City's action, or lack thereof, constituted deliberate indifference and proximately cause plaintiff's injuries." *Merman*, 824 F. Supp. 2d at 594. The causal link is not too tenuous, and therefore, the question whether the municipal policy or custom proximately caused the constitutional infringement should be left to the jury. <u>Bielevicz</u>, 915 F.2d at 851 (3d Cir. 1990). Therefore, Defendant's motion for summary judgment is denied with respect to Plaintiff's *Monell* claim premised on his failure to investigate theory.

*Count VIII: Deliberate Indifference to Medical Needs*

Plaintiff asserts an Eighth Amendment claim against the City for deliberate indifference to his medical needs after the alleged assault by Jones. Compl. at ¶ 85-86. To assert an Eight Amendment claim for indifference to medical needs:

> a prisoner must demonstrate "(1) that defendants were deliberately indifferent to [his] medical needs and (2) that those needs were serious." *Rouse v. Plantier*, 182 F.3d 192, 197 (3d Cir. 2003) (quoting *Farmer v. Brennan*, 511 U.S. 825, 837 (1994))). We have found deliberate indifference where a prison official:
>
> "(1) knows of a prisoner's need for medical treatment but intentionally refused to provide it; (2) delays necessary medical treatment based on a nonmedical reason; or (3) prevents a prisoner from receiving needed or recommended treatment." *Rouse*, 182 F.3d at 197. Deference is given to prison medical authorities in the diagnosis and treatment of patients, and courts "disavow any attempt to second-guess the propriety or adequacy of a particular course of treatment . . . (which) remains a question of sound professional judgment." *Inmates of Allegheny Cty. Jail v. Pierce*, 612 F.2d 754, 762 (3d Cir. 1979) (quoting *Bowring v. Godwin*, 551 F.2d 44, 48 (4th Cir. 1977)). Allegations of negligent treatment or medical malpractice do not trigger constitutional protections. *Estelle v. Gamble*, 429 U.S. 97, 105-06 (1976).

15

*Pierce v. Pitkins*, 520 F. App'x 64, 66 (3d Cir. 2013) (per curiam). "A medical need is serious if it 'has been diagnosed by a physician as requiring treatment,' or if it 'is so obvious that a lay person would easily recognize the necessity for a doctor's attention.'" *See Mitchell v. Beard*, 492 F. App'x 230, 236 (3d Cir. 2012) (per curiam) (quoting *Atkinson v. Taylor*, 316 F.3d 257, 272-73 (3d Cir. 2003) (quoting *Monmouth Cty. Inst. Inmates v. Lanzaro*, 834 F.2d 326, 347 (3d Cir. 1987))).

Defendant points to the ambulance report to show that Plaintiff was, in fact, examined by EMTs after he was struck in the face. Def. Mot. at 21. The report's narrative describes the treatment given to Plaintiff for his bloody nose and his subsequent refusal of transport to the hospital. Def. Mot., Ex. G at 2. The report further indicates that the EMTs observed that Plaintiff was oriented to person, place, time, and situation, with no altered level of consciousness and no indication of a head injury. *Id.* at 3. Plaintiff's opposition to Defendant's motion for summary judgment does not address this argument. The Court finds that the EMT interaction with Plaintiff demonstrates that Jones and the City did not intentionally refuse to provide medical treatment to Plaintiff, nor did they delay necessary medical treatment for a nonmedical reason, nor did they prevent Plaintiff from receiving needed medical treatment. The facts as they appear in the record suggest, at most, a negligent failure by the EMTs and Jones to recognize an injury more significant than a bloody nose. However, allegations of negligent treatment do not trigger the constitutional protections of the Eighth Amendment. *See Estelle*, 429 U.S. at 105-06 (1976). Therefore, the Court grants the Defendant's motion for summary judgment with respect to Count VIII.

*Count IX: Ashlee Sims's Per Quod Claim*

Plaintiff Ashlee Sims has pleaded a per quod claim against all defendants based on the alleged injuries and losses of Plaintiff Jamie Worster-Sims. A per quod, or loss of consortium, claim is a separate cause of action for loss of society, companionship, and services from an injured spouse. *See Kibble v. Weeks Dredging & Constr. Co.*, 161 N.J. 178, 735 A.2d 1142, 1149 (NJ. 1999). A per quod claim is a derivative cause of action whose viability depends on the existence of tortious conduct against the injured spouse. *See Tichenor v. Santillo*, 218 N.J. Super. 165, 527 A.2d 78, 8 (N.J. Super. Ct. App. Div. 1987). Defendant argues that Count IX must fail because all other claims against the Defendant must fail. Ashlee Sims's claim cannot be derivative from Plaintiff's assault & battery or intentional infliction of emotional distress claims because the Court granted summary judgment for the City on Counts I and V. Furthermore, Sims's claim cannot be derivative of Plaintiff's section 1983 claim against the City. It is well established that third parties lack standing to bring claims under section 1983. *See Pahle v. Colebrookdale Twp.*, 227 F. Supp. 2d 361, 381 (E.D. Pa. 2002) ("It is well-established that a spouse . . . has no standing to raise § 1983 claims resting on violations of her husband's constitutional rights."); 42 U.S.C. § 1983 ("Every person who . . . subjects or, causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be *liable to the party injured* in an action at law.") (emphasis added). Additionally, this Court has previously found that "there exists no constitutional interest in the consortium of one's spouse." *Norcross v. Town of Hammonton*, Civil No. 04-2536 (RBK), 2006 WL 1995021, at *3.

The remaining claim against the City is for negligence. This Court found that Plaintiff provided sufficient evidence to survive summary judgment for his New Jersey state-law claim

for the tort of negligent hiring, supervision, and retention against the City. Ashlee Sims's per quod claim is viable as derivative of the claim in Count III. The Court denies Defendant's motion for summary judgment with respect to Count IX.

### B. Claims Against Michael Jones

As noted above, Worster-Sims brings claims against Michael Jones for assault and battery, negligence, negligent infliction of emotional distress, intentional infliction of emotional distress, a section 1983 claim for use of excessive force, and deliberate indifference to medical needs. Plaintiff Ashlee Sims, his wife, brings a derivative per quod claim.

Defendant submitted a letter brief in place of a formal motion for summary judgment. (Doc. No. 163). Defendant makes no arguments independent of those advanced in Atlantic City's Motion for Summary Judgment (Doc. No. 161). Defendant claims that his interests are merged with those of the City for the purposes of the instant motion. Def. Mot. at 7. Defendant is incorrect. Atlantic City's motion focuses exclusively on *Monell* liability and municipal liability for the torts of employees. The City's brief does not address Michael Jones's individual liability for the above counts. For the reasons discussed above, the Court grants Jones's motion for summary judgment with respect to Counts IV and VIII. The Court denies Jones's motion for summary judgment with respect to Counts I, II, III, V, VI, and IX.

## IV. CONCLUSION

For the reasons stated herein, Defendant Atlantic City's motion for summary judgment as to Counts I, IV, V, and VIII is **GRANTED**. Defendant Atlantic City's motion for summary judgment as to Counts III, VII, and IX is **DENIED**. Defendant Michael Jones's motion for summary judgment as to Counts IV and VIII is **GRANTED**. Jones's motion for summary

judgment as to Counts I, II, III, V, VI, and IX is **DENIED**. Defendant Atlantic City Police Department is **DISMISSED**. An appropriate order shall issue.

Dated:   09/08/2016                                                                  s/Robert B. Kugler
                                                                                     ROBERT B. KUGLER
                                                                                     United States District Judge