NOT FOR PUBLICATION                                    (Doc. No. 162)

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY
CAMDEN VICINAGE

| | | |
|---|---|---|
| JAMIE DEE WORSTER SIMS and ASHLEE SIMS, | : : : | Civil No. 13-1981 (RBK/JS) |
| Plaintiffs, | : : | **OPINION** |
| v. | : : | |
| TROPICANA ENTERTAINMENT, INC., et al., | : : | |
| Defendants. | : : | |

**KUGLER**, United States District Judge:

Jamie Worster-Sims and Ashlee Sims ("Plaintiffs") bring federal and state claims against the City of Atlantic City ("the City") and Officer Michael Jones ("Jones"). Plaintiffs also bring state law claims against Tropicana Entertainment, Inc., Tropicana Entertainment Holdings, LLC, Tropicana Entertainment Intermediate Holdings, LLC, Tropicana Entertainment, LLC, Tropicana Atlantic City Corporation, Tropicana AC Sub Corporation ("the Tropicana Defendants"), Providence AC, Inc. ("Providence"), and Metronome Hospitality Group ("Metronome"). Plaintiffs also bring state law claims against fictitious defendants John Does I-X and ABC Corp. I-X. This matter comes before the Court on the Motion for Summary Judgment of Defendants Metronome Hospitality Group and Providence Atlantic City, Inc. (Doc. No. 162). For the following reasons, Defendants' motion is **GRANTED**.

1

I.  **FACTUAL BACKGROUND**

The facts, in the light most favorable to the Plaintiffs, are as follows: On April 30, 2011, Jamie Worster-Sims ("Plaintiff") went to Atlantic City to celebrate his cousin's bachelor party with a group of friends and family. Def. Mot., Ex. D at 68:23-69:3 (Doc. No. 162-7). The group included Plaintiff's cousin, Beau Cantera ("Cantera"). *Id.* at 72:18-20; 77:2-5.

Members of the group continued the celebration at Club Providence. *Id.* at 78:16-20. Club Providence is a nightclub in The Quarter, which is an area within the Tropicana Casino and Hotel. *Id.* at 77:6-9; 78:16-20. The group was seated in the VIP section of the Club. *Id.* at 84:3-7. After some time, Plaintiff and Cantera left their group's table in the VIP area to use the restroom. *Id.* at 88:23-25; 89:1-2. Plaintiff and Cantera returned from the restroom to find that their group was gone from the VIP area. *Id.* at 89:3-4; Def. Mot., Ex. F at 57:17-22 (Doc. No. 162-9).

The parties disagree over what happened next. Plaintiff claims that at some point in the early morning hours, Providence staff asked Plaintiff and Cantera to leave the Club. Def. Mot., Ex. D at 88:2-12. Security guards then picked up and carried Plaintiff and Cantera from the Club. *Id.* at 96:4-97:16; 106:2-4. Plaintiff's shoe fell off while he was carried from the Club. *Id.* at 110:12-16. When Plaintiff attempted to retrieve the shoe, a security guard kicked the shoe back towards the entrance of the club. *Id.* at 111:17-20; 112:4-12. Cantera retrieved the shoe. *Id.* at 114:4-11. Plaintiff and Cantera then started away from the Club. *Id.* at 116:4-5.

The Defendants claim that Plaintiff and Cantera were first asked to leave the VIP area after speaking with patrons at a different table and attempting to take drinks from that table. Def. Mot., Ex. G at 2-3 (Doc. No. 162-11). Defendants claim that Plaintiff and Cantera refused to comply with the request to leave, which led to two Providence employees escorting them from the club. *Id.*

2

As Plaintiff and Cantera were escorted from Providence, Jones arrived to assess what was happening. Def. Mot., Ex. F at 69:4-6. Cantera stated that when Jones approached him, he poked Jones in the chest with his index finger and called Jones an expletive. *Id.* at 22-24. Cantera claims that he then turned to walk away from Jones. *Id.* at 73:23-25. Cantera then saw Jones strike Plaintiff in the face. *Id.* at 78:13-17. Plaintiff and Cantera both deny Plaintiff ever touching Jones. *Id.* at 129:3-5; Def. Mot., Ex. D at 119:4-15. Cantera then ran at Jones, but came to his senses and stopped short of making contact. Def. Mot., Ex. F at 82:23-83:6. Cantera recounts that Jones then knocked him unconscious with a single strike to the face. *Id.* at 84:14-22.

Defendants do not contest that Jones struck Plaintiff. The parties to the instant motion do, however, disagree over the degree of control Providence could exert over Officer Jones while he was on a special detail and whether Officer Jones was Providence's agent. To the extent that this argument involves references to Office of the Attorney General of the State of New Jersey Formal Opinion No. 23-1977 and Police Department City of Atlantic City General Order 016 of 2005, the Court acknowledges that the documents exist.[1]

## II. STANDARD

The court should grant a motion for summary judgment when the moving party "shows that there is no genuine dispute as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). An issue is "material" to the dispute if it could alter the outcome, and a dispute of a material fact is "genuine" if "a reasonable jury could return a verdict for the non-moving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986). In deciding whether there is any genuine issue for trial, the court is not to weigh evidence or decide

---

[1] Several legal arguments regarding the applicability of the above-mentioned Opinion and Order appear in the Defendant's Statement of Undisputed Material Facts. While these arguments go to the crux of this motion, the Court would like to remind the parties that Local Civil Rule 56.1(a) states, "[e]ach statement of material facts shall be a separate document (not part of a brief) and shall not contain legal argument or conclusions of law."

issues of fact. *Id.* at 248. Because fact and credibility determinations are for the jury, the non-moving party's evidence is to be believed and ambiguities construed in her favor. *Id.* at 255.

Although the movant bears the burden of demonstrating that there is no genuine issue of material fact, the non-movant likewise must present more than mere allegations or denials to successfully oppose summary judgment. *Anderson*, 477 U.S. at 256. The nonmoving party must at least present probative evidence from which jury might return a verdict in his favor. *Id.* at 257. Furthermore, the nonmoving may not simply allege facts, but instead must "identify those facts of record which would contradict the facts identified by the movant." *Port Auth. of New York and New Jersey v. Affiliated FM Ins. Co.*, 311 F.3d 226, 233 (3d Cir. 2002). The movant is entitled to summary judgment where the non-moving party fails to "make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

### III. DISCUSSION

Plaintiff Jamie Worster-Sims brings claims against Providence and Metronome alleging assault and battery, negligence, negligent infliction of emotional distress, and intentional infliction of emotional distress. Plaintiff Ashlee Sims, his wife, brings a derivative per quod claim.

#### A. Claims

*Count I: Assault and Battery*

Plaintiff claims that Defendants are responsible for Jones's alleged assault and battery of Plaintiff as Jones's princpals/employers. Compl. ¶ 47-49.

The common law doctrine of *respondeat superior* provides that an employer or principal is liable for his employee's or agent's wrongful acts committed within the scope of the employment

4

or agency relationship. *Wright v. State*, 169 N.J. 422, 426, 778 A.2d 443 (2001). Whether an agency relationship exists depends upon the control the principal has over the agent, as demonstrated by both direct and circumstantial evidence. *Id.* (citations omitted). New Jersey law sets out a two-part test for what a plaintiff must prove to establish *respondeat superior* liability: "(1) that a master-servant relationship existed and (2) that the tortious act of the servant occurred within the scope of that employment." *Carter v. Reynolds*, 175 N.J. 402, 409, 815 A.2d 460, 463 (2003).

New Jersey courts recognize section 220 of the Restatement (Second) of Agency as "the touchstone for determining who is a servant." *Carter*, 175 N.J. at 409 (citing *Wright*, 169 N.J. at 436; *Mavrikidis v. Petullo*, 153 N.J. 117, 131-32, 707 A.2d 977 (1998)). Section 220 states:

> (1) A servant is a person employed to perform services in the affairs of another and who with respect to the physical conduct in the performance of the services is subject to the other's control or right to control.
> (2) In determining whether one acting for another is a servant or an independent contractor, the following matters of facts, among others, are considered:
>   (a) the extent of control which, by the agreement, the master may exercise over the details of the work;
>   (b) whether or not the one employed is engaged in a distinct occupation or business;
>   (c) the kind of occupation, with reference to whether, in the locality, the work is usually done under the direction of the employer or by a specialist without supervision;
>   (d) the skill required in the particular occupation;
>   (e) whether the employer or the workman supplies the instrumentalities, tools, and the place of work for the person doing the work;
>   (f) the length of time for which the person is employed
>   (g) the method of payment, whether by the time or by the job;
>   (h) whether or not the work is a part of the regular business of the employer;
>   (i) whether or not the parties believe they are creating the relation of master and servant; and
>   (j) whether the principal is or is not in business.

*Restatement (Second) of Agency* § 220 (1958).

Several of the section 220 factors weigh in favor of Jones's status as an agent of Providence. Factor (b) suggests agency because Jones, as a police officer on a special detail, was not engaged in a distinct occupation or business from Providence. Providence provides security for its guests as a regular part of its business and Jones was present to provide additional security as a law enforcement officer. Factor (h) also suggests agency, since providing security for guests is part of the regular business of Providence. Factor (j) also weighs in favor of an agency relationship as Providence is in business. Furthermore, factor (g), the method of payment, suggests a master-servant relationship because Jones was paid by the hour for his work on details. *See* Def. Mot., Ex. C at 2,7 (Doc. No 162-6). Finally, factor (f), the length of time employed, also suggests a master-servant relationship, as Jones had been detailed at Providence regularly over several years.

Factors (a), (c), (d), (e), and (i) all weigh in favor of Jones's status as an independent contractor. As to factor (a), there is very little to suggest that Providence had control over the details of Jones's work as a detail officer. Plaintiff argues that Providence had authority to determine which officers worked their detail. Providence had the right to refuse an officer assigned to their detail by the Atlantic City Police Department, but Providence did not have the power to affirmatively choose the officers assigned to them. Pl's Opp'n Mot., Ex. A at 48-49:7 (Doc. No. 168-1); *see also id.* at 46:19-21 (stating that Jones's assignment to Providence was a "coincidence."). Furthermore, while Jones testified that Providence told him what they needed him to do while working the detail, the club did not exert control over the details of his work. Def. Mot., Ex. K at 176:18-177:7 (Doc. No. 162-17). Jones was stationed outside of Providence; he would only enter the club to use the restroom or respond to a crime. Def. Mot., Ex. L at

6

33:14-23 (Doc. No. 162-18). Providence also had no power to substitute its judgment for Jones's professional judgment as a sworn police officer. The mere facts that Providence could request a different officer from the Atlantic City Police Department and that Providence could ask Jones for help with disorderly patrons are not enough to establish control over the details of Jones's performance as a police officer.

Factor (c), whether the work is usually done under the direction of the employer, also indicates Jones was an independent contractor for Providence. Plaintiff argues that security work around the club would normally be supervised by someone such as Brian Daniels, the Head of Security at Providence. Pl.'s Opp'n Mot. at 11. Jones was not a standard security guard for Providence; Jones was a uniformed police officer stationed outside of Providence on a special detail. As a police officer, Jones was supervised by a special detail sergeant, was required to stay in contact with the Atlantic City Police Department, could be recalled from the post for official police business, and was subject to discipline by the Atlantic City Police Department for his actions while on detail. *See* Def. Mot., Ex. C. These facts do not indicate that Jones was acting under the direction of Providence.

Factors (d) and (e) further weigh towards characterizing Jones as an independent contractor. Jones's employment as a special detail police officer required his specialized skills acquired through attending the police academy and various other trainings. Jones relied on this training to exercise his professional judgment and discretion. Additionally, Jones made exclusive use of his own tools/equipment. He wore his full Atlantic City Police Department uniform, including his mace, baton, ammunition, and firearm. Def. Mot., Ex. L at 77:14-18.

Finally, factor (i) indicates Jones was an independent contractor because there is no evidence that Providence and Jones believed they were creating a master-servant relationship.

7

Jones explained that when interacting with patrons escorted out of Providence he would tell them "I do not work for Providence. I work for the Atlantic City Police Department . . . ." *Id.* at 88:3-11.

After considering the factors listed in section 220, the Court concludes that Jones was an independent contractor rather than an employee or agent of Defendants. Plaintiff therefore cannot show the existence of a master-servant relationship between Jones and Providence and cannot establish *respondeat superior* liability. Accordingly, the Court grants Defendants' motion for summary judgment as to Count I.

*Count II: Negligence*

Plaintiff alleges that Providence and Metronome were negligent in training, supervising, disciplining, and hiring employees. Plaintiff further alleges that Defendants failed to provide safe premises to Plaintiff by not having a comprehensive plan between Providence, Tropicana, and the Atlantic City Police Department for handling patrons escorted from Providence.

Plaintiff's claims as to negligent supervision, negligent hiring, failure to train and supervise, and failure to discipline employees fail based on the above analysis finding that Jones and Providence lacked a master-servant relationship.

As an initial matter, the essential elements for a negligence claim are: (1) a duty of care, (2) a breach of that duty, (3) actual and proximate causation, and (4) damages. *Jersey Cent. Power & Light Co. v. Melcar Util. Co.*, 212 N.J. 576, 594 (2013). Whether a duty exists and the scope of that duty are questions of law. *See Clohesy v. Food Circus Supermarkets, Inc.*, 149 N.J. 496, 502 (1997). Whether a duty has been breached is a question of fact to be decided by a jury. *Arvanitis v. Hios*, 307 N.J. Super. 577, 582 (App. Div. 1998). The Court may grant summary judgment on the issue of whether a duty has been breached if it is "satisfied a rational fact finder

8

could not conclude defendant breached [its] duty of care." *Endre v. Arnold*, 300 N.J. Super. 136, 143 (App. Div. 1997), *certif. denied*, 150 N.J. 27 (1997).

First with respect to the element of duty, in New Jersey, "business owners and landlords have a duty to protect patrons and tenants from foreseeable criminal acts of third parties occurring on their premises." *Clohesy v. Food Circus Supermarkets, Inc.*, 149 N.J. 496, 504 (1997). New Jersey courts rely on the Restatement (Second) of Torts Section 344 to determine the duty of care owed to business invitees. *See Clohesy*, 149 N.J. at 506-07. Section 344 states:

> A possessor of land who holds it open to the public for entry for his business purposes is subject to liability to members of the public while they are upon the land for such a purpose for physical harm caused by the accidental, negligent, or intentionally harmful acts of third persons or animals, and by the failure of the possessor to exercise reasonable care to
>
> (a) discover that such acts are being done or are likely to be done, or
>
> (b) give a warning adequate to enable the visitors to avoid the harm, or otherwise to protect them against it.

Additionally, Comment (f) to Section 344 states:

> Duty to police premises. Since the possessor is not an insurer of the visitor's safety, he is ordinarily under no duty to exercise any care until he knows or has reason to know that the acts of the third person are occurring, or are about to occur. He may, however, know or have reason to know, from past experience, that there is a likelihood of conduct on the part of third persons in general which is likely to endanger the safety of the visitor, even though he has no reason to expect it on the part of any particular individual. If the place or character of his business, or his past experience, is such that he should reasonably anticipate careless or criminal conduct on the part of third persons, either generally or at some particular time, he may be under a duty to take precautions against it, and to provide a reasonably sufficient number of servants to afford a reasonable protection.

The focus of whether business owners owe a duty of care to business invitees to protect against criminal acts of third parties primarily on foreseeability. *See Clohesy*, 149 N.J. at 505. New Jersey courts apply a "totality of the circumstances" test when considering the issue of foreseeability, "all the factors a reasonably prudent person would consider." *Clohesy*, 149 N.J. at 508. "The requirement of actual or constructive knowledge is merely a means of applying the general rule . . . that the proprietor may be liable if he knew or by the exercise of reasonable care could have discovered the dangerous condition, and it does not alter the basic duty to use ordinary care under all the circumstances." *Id.* (quoting *Bridgman v. Safeway Stores, Inc.*, 2 Cal. Rptr. 146, 148 (1960)).

According to Plaintiff, Defendants improperly removed Plaintiff and Cantera from Providence, which escalated the situation and led to Jones's alleged violent interaction with Plaintiff. Plaintiff further alleges that Defendants, along with Tropicana and the Atlantic City Police Department, negligently failed to institute a coordinated plan for handling patrons escorted from Providence. Pl.'s Opp'n Mot. at 12. Defendants counter that Jones's alleged conduct was unforeseeable. Def. Mot. at 13.

Based on the facts presented by the parties, the Court concludes that Defendants did not have a duty of care to protect Plaintiff from the alleged actions of Officer Jones. The Court does not find that there was a foreseeable risk of harm to Plaintiff of which Defendants should have been aware. Plaintiff's evidence is insufficient to suggest that Defendant had actual notice of any risk posed by Officer Jones's presence as a detail officer. Plaintiff points to no previous incidents in Officer Jones's tenure as a detail officer outside Providence that would have put Providence on notice of risk. Conversely, Providence's Head of Security stated that in his experience, Jones

"always had an even keel . . . and never let things get out of hand." Def. Mot., Ex. I at 51:5-7 (Doc. No. 162-13).

Additionally, the Court believes that a reasonable person would conclude that detailed police officers are likely to *reduce* the overall risk of harm to patrons, rather than create new hazards. Plaintiff's contention that the lack of a coordinated security plan between Providence, Tropicana and the Atlantic City Police Department led to a collective neglect of care for Plaintiff's safety does not contradict this conclusion, as it presupposes the existence of a duty owed to Plaintiff by Providence.

Plaintiff has not put forth evidence showing a dispute with respect to any fact on which this Court's determination of Providence's duty relies. Because the Court finds that Defendants had no duty to protect Plaintiff from the alleged actions of Jones, it also finds that Defendants was not negligent in the instant case. Accordingly, Defendants' motion for summary judgment as to Count II is granted.

*Count IV: Negligent Infliction of Emotional Distress ("NIED")*

Plaintiff next alleges negligent infliction of emotional distress ("NIED") against Defendants. When a physically injured tort victim experiences emotional distress in addition to physical injuries, she need not bring a separate claim for NIED. *See Mauro v. Raymark Indus., Inc.*, 116 N.J. 126, 137 (1989) (holding that a plaintiff who sustained a physical injury can recover for emotional distress without bringing a separate NIED claim). Under New Jersey law, both recognized theories of NIED contemplate the absence of direct physical injury. *Jablonowska v. Suther*, 195 N.J. 91, 104 (2008) (indicating that the two recognized forms of NIED under New Jersey law are the "zone of danger" theory where the plaintiff is located within a zone of risk created by the defendant's negligent conduct, and the theory allowing recovery for

11

witnessing the death or serious injury of a close family member). Plaintiff has not produced evidence that would allow him to recover under either recognized NIED theory. Accordingly, Defendant's motion for summary judgment with respect to Count IV is granted.

*Count V: Intentional Infliction of Emotional Distress ("IIED")*

To state a claim for IIED under New Jersey law, a plaintiff must allege that the defendant (1) acted intentionally or recklessly and (2) outrageously, and (3) proximately caused (4) severe distress. *Buckley v. Trenton Saving Fund Soc.*, 111 N.J. 355, 366 (1988). Regarding the first element, the defendant "must intend both to do the act and to produce emotional distress." *Id.* Next, the conduct must be "so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community." *Id.* (quoting Restatement (Second) of Torts § 46 cmt. d).[2] If the Court determines that the defendant's actions proximately caused the plaintiff's emotional distress, plaintiff must then show the distress suffered was "so severe that no reasonable man could be expected to endure it." *Buckley*, 111 N.J. at 366-67 (quoting Restatement (Second) of Torts § 46 cmt. j).

Defendant makes no specific argument regarding the IIED claim other than arguing that there is no genuine dispute of material fact regarding the claim. However, the Court finds that Plaintiff has not established a case for IIED. As discussed above, Jones was not an agent of Defendants, nor were Defendants even negligent towards Plaintiff. There is no showing that

---

[2] *See also 49 Prospect St. Tenants Ass'n v. Sheva Gardens, Inc.*, 227 N.J. Super. 449, 471-72 (App. Div. 1988) (quoting Restatement (Second) of Torts § 46 cmt. d) ("The cases thus far decided have found liability only where the defendant's conduct has been extreme and outrageous. It has not been enough that the defendant has acted with an intent which is tortious or even criminal, or that he has intended to inflict emotional distress, or even that his conduct has been characterized by 'malice' or a degree of aggravation which would entitle the plaintiff to punitive damages for another tort. Liability has been found only where the conduct has been so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and be regarded as atrocious, and utterly intolerable in a civilized community. Generally, the case is one in which the recitation of the facts to an average member of the community would arouse his resentment against the actor, and lead him to exclaim, 'Outrageous!' … The liability clearly does not extend to mere insults, indignities, threats, annoyances, petty oppressions, or other trivialities.").

Defendants' actions or inactions rose to the level of "extreme" or "outrageous." Therefore, Defendants' motion for summary judgment with respect to Count V is granted.

### *Count IX: Ashlee Sims's Per Quod Claim*

A per quod, or loss of consortium, claim is a separate cause of action for loss of society, companionship, and services from an injured spouse. *See Kibble v. Weeks Dredging & Constr. Co.*, 161 N.J. 178, 735 A.2d 1142, 1149 (NJ. 1999). A per quod claim is a derivative cause of action whose viability depends on the existence of tortious conduct against the injured spouse. *See Tichenor v. Santillo*, 218 N.J. Super. 165, 527 A.2d 78, 8 (N.J. Super. Ct. App. Div. 1987). Because the Court finds that Plaintiff Jamie Worster-Sims has no claims against Defendants, Plaintiff Ashlee Sims's per quod claim must also fail. Defendant's motion for summary judgment with respect to Count IX is granted.

### B. Punitive Damages

Punitive damages are available in New Jersey under the Punitive Damages Act, N.J. Stat. Ann. § 2A:15-5.9 et seq. Under the Act, punitive damages may be awarded when a plaintiff proves by clear and convincing evidence that he suffered harm from a defendant's acts or omissions that were "actuated by actual malice or accompanied by a wanton and willful disregard of persons who foreseeably might be harmed by those acts or omissions." N.J. Stat. Ann. § 2A:15-5.12(a); see *Nappe v. Anschelewitz, Barr, Ansell & Bonello*, 477 A.2d 1224, 1230 (N.J. 1984) ("To warrant a punitive award, the defendant's conduct must have been wantonly reckless or malicious. There must be an intentional wrongdoing in the sense of an 'evil-minded act' or an act accompanied by a wanton and willful disregard of the rights of another."). A plaintiff does not satisfy her burden by proving negligence or even gross negligence. N.J. Stat. Ann. § 2A:15-5.12(a).

Plaintiff argues that Jones's conduct meets the statutory burden for punitive damages. Plaintiff further claims that Providence willfully and wantonly neglected to conduct a background check for Jones before hiring him. The Court's analysis above determined that Jones had no master-servant relationship with Providence, nor was Providence negligent towards Plaintiff. Therefore, punitive damages are not warranted.

## IV.     CONCLUSION

For the foregoing reasons, Defendants' Motion for Summary Judgment is **GRANTED.**


Dated:  09/12/2016                                                                                  s/Robert B. Kugler
                                                                                                                ROBERT B. KUGLER
                                                                                                                United States District Judge